## Pfuhl v. Kleinmeyer

*Russell J. Heiple*, for plaintiff.
*James R. DiFrancesco*, for defendant.

ABOOD, *J.*, October 19, 1976—In November of 1971, a charter commission of seven members was elected in the City of Johnstown to study the charter and form of government of the city and consider a new charter and to make recommendations thereon. This was done pursuant to the authority found in the Act of July 15, 1957, P.L. 901, 53 P.S. §41101 et seq., known as the Optional Third Class City Charter Law.

In February of 1972, the charter commission

submitted its report to the city officials and residents of the City of Johnstown.

At the primary election in April of 1972, the voters of the City of Johnstown approved the Mayor-Council Plan A form of government as recommended by the charter commission in their report.

The new nine-member city council elected pursuant to the adoption of the Mayor-Council Plan A form of government, on February 13, 1974, properly and duly adopted ordinance no. 3988, that being the new Administrative Code of the City of Johnstown.

Section 314, subsection (a), of ordinance no. 3988 reads as follows:

"Section 314. Bureau of Law.

"(a) The city solicitor shall be appointed by the mayor with the advice and consent of council. The mayor may appoint, with the advice and consent of council, such assistant solicitor or solicitors as he and the city solicitor deem necessary."

On the 25th day of February, 1976, defendants, acting as the council of the City of Johnstown, enacted ordinance no. 4037 amending section 314 of ordinance no. 3988 to read as follows:

"a. The city solicitor shall be appointed by council. The council may appoint such assistant solicitor or solicitors as deemed necessary."

The Mayor of the City of Johnstown, on March 5, 1970, vetoed ordinance no. 4037 and the city council on March 10, 1976, again passed the said ordinance, thereby overriding the veto.

The mayor, on April 12, 1976, filed a petition for declaratory judgment asking the court to rule on the validity of ordinance no. 4037 of the City of Johnstown.

At the hearing on this matter held on September 1, 1976, an attempt was made to define the issue or issues involved. There was a discussion on record at that time regarding whether or not the passage of the Act of April 13, 1972, P.L. 184, 53 P.S. §1-101 et seq., amended that provision of the 1957 act which gives rise to the dispute at hand. There was a further colloquy or conclusion that if that were the case, the issue would be determined one way or another. As is so unfortunately true, issues are not that easily or simply resolved.

Section 1306 of the Act of April 13, 1972, P.L. 184, 53 P.S. §1-1306, clearly exempts the Mayor-Council Plan A form of government adopted by the City of Johnstown from its provisions. It specifically states that if proceedings by the city were initiated under the 1957 Act, that is the Act of July 15, 1957, P.L. 901, known as the Optional Third Class City Charter Law, that the city may adopt its plan and function under the provisions of that act. The City of Johnstown did exactly that. The Administrative Code of the City of Johnstown, ordinance no. 3988 was adopted pursuant to the 1957 act and the proceedings to adopt their plan were initiated before the effective date of the 1972 act.

Thus, concluding that the City of Johnstown Mayor-Council Plan A form of government is functioning under authority of the Act of July 15, 1957, P.L. 901, 53 P.S. §41101 et seq., the issue to be determined by this action is whether or not the city council has the specific authority to appoint the city solicitor under the general provisions of the act and, specifically, under section 410 of the said act, 53 P.S. §41410.

Section 410 reads as follows:

"City clerk; solicitor; planning board; zoning

board of adjustment; personnel board; advisory bodies

"(a) The council shall appoint a city clerk, who shall serve as clerk of the council, keep its minutes and records of its proceedings, maintain and compile its ordinances and resolutions as this act requires, and perform such functions as may be required by law. The city clerk shall, prior to his appointment, have been qualified by training or experience to perform the duties of the office.

"(b) The council may provide for the manner of appointment of a city solicitor, any planning board, zoning board of adjustment or personnel board in the city, and may create commissions and other bodies with advisory powers."

Plaintiff by his petition seeks an interpretation of section 410 of the 1957 act, the Optional Third Class City Charter Law, to determine the validity of ordinance no. 4037 enacted by the Council of the City of Johnstown on March 10, 1976.

Plaintiff's petition was filed pursuant to the Uniform Declaratory Judgment Act enacted in Pennsylvania on June 18, 1923, P.L. 840, 12 P.S. §831 et seq.

The petition sets forth a justifiable controversy, this point not being contested, for determination by this court.

In order to determine the validity or legality of ordinance no. 4037, section 410 of the Act of July 15, 1957, must be interpreted.

The Statutory Construction Act of May 28, 1937, P.L. 1019, 46 P.S. §501 et seq., sets forth guidelines of interpretation the court must rely upon. Section 51 reads, in part, as follows:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention

of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions. . . . When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) The occasion and necessity for the law; . . . (4) The object to be attained; . . . (6) The consequences of a particular interpretation; . . . ."

Section 52 of the same act reads, in part, as follows:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others:

"(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable;

"(2) That the Legislature intends the entire statute to be effective and certain; . . . ."

In reliance upon those interpretative guidelines, one must conclude that the occasion or reason for the passage of the Optional Third Class City Charter Law on the part of the legislature was to provide the residents of a third class city an opportunity to choose a different form of government, those alternatives being set forth in the act. The object to be attained was identical to the occasion or reason for its passage; that is, to give the residents of a third class city a different form of government than was then existent under which to function.

The court must presume that the legislature intended that the entire statute be effective and certain and that it did not intend an absurd, impossible and unreasonable result.

With those concepts in mind, the court must be careful of the consequences of the particular in-

terpretation or interpretations of section 410 of the Act of July 15, 1957.

Subsection (a) of section 410 is definitive and clear and, therefore, renders an interpretation of same easy. Subsection (a) is not a part of the controversy as such, but may aid in interpreting subsection (b), which, indeed, is the subsection in controversy.

While subsection (a) is definitive and mandatory in its tone and meaning, subsection (b) upon reading same seems to be discretionary and ambiguous. To resolve the ambiguity, the interpretative guidelines require that the entire act be considered to give it full effect.

The act in section 407, 53 P.S. §41407, gives the legislative power of the city to the city council. Section 411, 53 P.S. §41411, gives the executive power of the city to the mayor. The administrative duties regarding the every-day functions of city government are vested in the mayor.

The overall purpose of the legislature by enacting the Optional Third Class City Charter Law was to permit third class cities when choosing the Mayor-Council Plan A to operate the city government in a structure similar to the State and Federal governments. The legislature, in fact, provided for the traditional separation of powers as we have come to know them in the United States of America. The legislature as regards the act in question, intended that there be a separation of powers between the council in their legislative function and the mayor in his executive function.

The position of solicitor in this city government can be compared to the position of attorney general or solicitor general in the State governments and Federal government that function in this Nation.

That position in the Federal government is filled by appointment of the executive with the advice and consent of the Senate. In State governments, that position is filled either by the electoral process or by appointment of the executive with the advice and consent of the legislature or a branch thereof. Not in any of those instances does the legislative body appoint or designate the person to fill same exclusively.

In an effort to further ascertain the intent of the legislature, the court has examined the Act of May 31, 1911, P.L. 461, 53 P.S. §22226, relative to cities of the second class and the Act of June 25, 1919, P.L. 581, 53 P.S. §12461, relative to cities of the first class, and in those provisions the appointment of the solicitor is vested in the executive subject to the advice and consent of the legislative branch of the city government.

Plaintiff's council, in addition to referring to the above examples in support of plaintiff's position, cites several United States Supreme Court cases, namely: Buckley v. Valeo, 424 U.S. 1, 96 S. Ct. 612 (1976); Springer v. Philippine Islands, 277 U.S. 189, 48 S. Ct. 480 (1927), and Myers v. United States, 272 U.S. 52, 47 S. Ct. 21 (1926), wherein the Supreme Court discusses the doctrine of the separation of powers. The court emphasizes the necessity of guarding against infringement by any branch of government upon the other. By analogy, plaintiff contends that if the act in controversy in this case were interpreted to mean that the city council has exclusive authority to appoint the solicitor, this would be an infringement of the legislative power into the executive branch. The result could be that the legislative branch was appointing its own interpreter of its legislation.

Analyzing section 410 on its face and subsection (b) in relation to subsection (a) in particular, the legislature did not use the same definitive and mandatory language in the (b) subsection as was used in subsection (a).

Defendants contend that the language of subsection (b) of section 410, wherein it says, "The council may provide for the manner of appointment of a city solicitor . . ." gives the city council exclusive authority to appoint the solicitor because they may provide the manner in which the appointment is made. Subsection (a) of section 410, in contrast, provides that "The council shall appoint a city clerk . . . ."

Does the unequivocal and mandatory authority to appoint a city clerk as provided in subsection (a) necessarily give the council under subsection (b) the same authority relative to the appointment of the solicitor? If the same authority was to be extended, why did the legislature subdivide section 410, and why did they not use the same mandatory and unequivocal language?

One must conclude from the reasons hereinbefore set forth that the Pennsylvania legislature did not intend to vest the exclusive authority to appoint the solicitor in subsection (b) as it did in the appointment of the city clerk, as seen in subsection (a), in the city council.

Ordinance no. 3988 does provide the manner of appointment as is authorized by subsection (b) of section 410 in that the solicitor is to be appointed by the mayor with the advice and consent of council. The right of the mayor to appoint the solicitor is conditioned upon the manner, presuming that is reasonable and legal, as established by the council, but the exclusive appointment of the solicitor is not

vested in the city council by the enabling legislation, namely, the Act of July 15, 1957, P.L. 901, the Optional Third Class City Charter Law.

Accordingly, we enter the following

### ORDER

And now, October 19, 1976, ordinance no. 4037 enacted by the City Council of the City of Johnstown on March 10, 1976, is hereby declared unconstitutional and, therefore, illegal and void, and is set aside as having no effect for the reason that the City Council of the City of Johnstown by enacting ordinance no. 4037 exceeded its authority as granted under the Third Class City Charter Law enacted on July 15, 1957.