542 A.2d 202

James T. Malloy, Jr. et al., Appellants *v.* Herbert Pfuhl, Jr., and The City of Johnstown, Appellees.

Argued March 23, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, COLINS, PALLADINO, MCGINLEY and SMITH.

*Nicholas Banda,* for appellants.

*Richard J. Green, Jr.,* for appellees.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., June 1, 1988:

The members of the Council of the City of Johnstown (Council)[1] appeal a Cambria County Common

___

[1] James T. Malloy, Jr.; Albert M. Penska; Fern Dorian; John Williams; William Stasko; William S. Gentile, Jr.; Ron R. Stevens; Anthony C. Truscello; and Owen W. Wissinger.

Pleas Court order declaring certain wage and salary ordinances[2] invalid. We reverse.

In 1972, the citizens of Johnstown voted to adopt a new form of local government under the Optional Third Class City Charter Law[3] (Charter Law) entitled Mayor-Council Plan A,[4] thereby replacing the previous commission scheme delineated in The Third Class City Code.[5]

Pursuant to the transitional provisions of the Charter Law,[6] the Council through ordinance adopted an Administrative Code which in pertinent part established the positions and salaries of several elected and appointed officials, their employees and various other municipal service employees.[7] Similar wage and salary ordinances amending the Administrative Code were enacted annually from 1974 until 1986, at which time Mayor Herbert Pfuhl, Jr., vetoed the ordinances on the grounds that they illegally encroached on executive

---

[2] The ordinances are numbered 4414, 4415 and 4416 and were enacted by Council on December 21, 1986.

[3] Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. §§41101-41625.

[4] Mayor-Council Plan A is contained in Sections 401-421 of the Charter Law, 53 P.S. §§41401-41421.

[5] Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§35101-39951.

[6] Sections 620-625 of the Charter Law, 53 P.S. §§41620-41625. Council relies heavily upon Section 624 to contend that it was authorized to establish by ordinance the terms of all appointive officers and employees of the city. However, Section 624 is merely a transitional provision, permitting the adoption of interim resolutions prior to the adoption of formal ordinances establishing the organization and administration of city government. We do not find it dispositive of the instant issue.

[7] Wages and salaries are established for all enumerated positions within these offices and departments: Mayor's office, City Council and City Clerk, Controller's office, Treasurer's office, Solicitor's office, Finance Department, Fire and Police Department, etc.

branch powers.[8] Council voted to override the veto, prompting the Mayor to seek declaratory and injunctive relief.

After hearing, the common pleas court held that:

> . . . fixing the *specific* number of subordinate officers and employees in departments not under their administration, that would either directly or indirectly *hire or fire* employees in said departments; and by fixing *specific* compensation of individual personnel not under their administration, Council exceeded the authority granted to it under the Third Class City Charter Law—optional form Mayor-Council Plan A.

Opinion, p. 6; emphasis in original.

The sole issue for our disposition is whether Mayor-Council Plan A, as delineated in the Charter Law, precludes Council from enacting ordinances which establish the positions and salaries of municipal employees.

We begin by examining the enabling provision of the Charter Law, Section 303,[9] which provides, in pertinent part:

> Each city governed by an optional form of government pursuant to this act shall, subject to the provisions and limitations prescribed by this act, have full power to:
>
> (1) Organize and regulate its internal affairs, and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their term, tenure and compensation;

---

[8] Mayor Pfuhl previously vetoed this ordinance in 1977 but Council overrode his veto at that time and no judicial relief was sought.

[9] 53 P.S. §41303.

>    (2) . . . to exercise all powers of local gov-
>    ernment in such manner as its governing body
>    may determine.

This provision vests a local government with substantial authority to regulate its own affairs but does not permit it to adopt ordinances which contravene the enabling act itself. *Marshall v. Bentzel,* 40 Pa. Commonwealth Ct. 273, 397 A.2d 444 (1979). Section 304[10] provides that the Charter Law is intended to confer the greatest power of local self-government and any specific enumeration of that power shall *not* be construed to limit the general description of power contained in the Charter Law. So long as Council acts within its scope of authority and does not violate any laws of the Commonwealth, its actions or policies will not be disturbed by the judiciary. *Almy v. Borough of Wilkinsburg,* 53 Pa. Commonwealth Ct. 46, 416 A.2d 638 (1980); *City Council of Bethlehem v. Marcincin,* 512 Pa. 1, 515 A.2d 1320 (1986).

In enacting the Charter Law, the General Assembly has prescribed several optional charter plans which may be adopted by cities of the third class, each of which are subject to certain restrictions and limitations. Generally, Mayor-Council Plan A provides that the legislative power of the city shall be exercised by the city council, Section 407,[11] while the executive power shall be exercised by the mayor. Section 411.[12] The mayor's authority to control personnel is found in Section 415,[13] which provides:

>    (c) Each department shall be headed by a
>    director who shall be appointed by the mayor

---

[10] 53 P.S. §41304.
[11] 53 P.S. §41407.
[12] 53 P.S. §41411.
[13] 53 P.S. §41415.

with the advice and consent of the council. . . . No member of city council shall head a department.

(d) The mayor may, in his discretion, remove any department head after notice and an opportunity to be heard. . . .

(e) . . . [D]epartment heads shall appoint subordinate officers and employes within their respective departments and may, with approval of the mayor, remove such officers and employes.[14]

Mayor-Council Plan A also delineates specific budgetary procedures which require the mayor to prepare and submit a detailed recommended budget which Council may then amend prior to adoption. Sections 417, 418.[15] Additionally, Section 607(c) of the Charter Law,[16] applicable to all optional plans, specifically directs Council to fix the compensation to be paid to the controller, treasurer and *department heads*.

Pursuant to these provisions, Council adopted Administrative Code Section 294.06 in 1983, which states that "Personnel administration for the city, heretofore vested in council, shall be vested in the mayor, and such

---

[14] *Section 412, 53 P.S. §41412, further defines the mayor's enforcement and supervisory powers as follows:*

The mayor shall enforce the charter and ordinances of the city and all general laws applicable thereto. He shall, annually, report to the council and the public on the work of the previous year and on the condition and requirements of the city government and shall, from time to time, make such recommendations for action by the council as he may deem in the public interest. He shall supervise all of the departments of the city government, and shall require each department to make an annual and such other reports of its work as he may deem desirable.

[15] 53 P.S. §§41417, 41418.

[16] 53 P.S. §41607(c).

administration shall be exercised in accordance with procedures adopted by the mayor." The common pleas court found that the word "administration," as used in this ordinance, encompassed the fixing of specific numbers of employees and their specific salaries or wages and thus were matters within the mayor's executive power. We respectfully disagree.[17]

The reasonable implication from the explicit budgetary directives contained in Section 418 and in Section 607(c) of the Charter Law is that Council ultimately determines the number and compensation of subordinate municipal employees. While Section 417 empowers the Mayor to submit a detailed budget which may include specific proposals as to the complement and salaries of all public employees, in the final analysis Council must approve these proposals and may, pursuant to Section 418, reduce or increase any budgetary items.

In this instance, the record discloses that the Mayor failed to submit a detailed proposed salary ordinance for 1987 (Reproduced Record, p. 48A), which task was then taken up by Council. Therefore, we cannot say that Council usurped the executive's prerogative when, in fact, the Mayor failed to exercise whatever prerogative was within his purview.

---

[17] As correctly noted by the Mayor, Mayor-Council Plan A on the whole reveals a scheme in which the executive branch is endowed with considerable administrative authority. A comparison with the alternate Council-Manager Plan found within the Charter Law, Article V, 53 P.S. §§41501—41522, reveals that under that model City Council undertakes key administrative duties. *E.g.*, Section 511, 53 P.S. §41511. The Mayor and the City point to these basic differences and make much of the reference to the "strong Mayor" form of government intended by Mayor-Council Plan A. Such characterizations are not determinative of the precise question here.

It is beyond argument that Council must respect the separation of executive and legislative authority. Although in this instance Council's salary ordinance would cause several positions to be eliminated, Council did not arrogate the discretion of the executive branch to determine which individuals would be relieved of their positions. The exclusively executive functions of choosing personnel and administering the day-to-day operations of the municipal government have been left intact. Section 415; Administrative Code, Section 294.06. At the same time, the traditionally legislative function of ultimately deciding upon a budget and, thereby determining the size of government is likewise preserved. Section 418. While it is true that under Mayor-Council Plan A, the mayor has the authority to consent to any hiring or firing by department, Section 415(e), we find it a valid legislative action for Council to require departmental reductions when budgetary concerns indicate their necessity.

Finally, we note that under Johnstown's former government plan, Council was obligated to prescribe by ordinance the number, duties and compensation of the officers and employees of the city.[18] Because the instant salary ordinances are consistent with the former Code and do not directly conflict with Mayor-Council Plan A or the Charter Law, we hold that they are valid.

Accordingly, the decision of the common pleas court is reversed.[19]

ORDER

The order of the Cambria County Common Pleas Court, No. 1987-33 dated February 10, 1987, is reversed.

---

[18] Section 902 of the Third Class City Code, 53 P.S. §35902.

[19] Based on our disposition, we need not address Council's assertion of procedural impropriety.