**Mayor Thomas F. GOLDSMITH, Appellant,**

v.

**CITY COUNCIL OF the CITY OF EASTON, Josephine Smull, Daniel Corpora, John Wagner, Burns Bamford and Timothy Pickel.**

Commonwealth Court of Pennsylvania.

Argued Dec. 2, 2002.

Decided Feb. 11, 2003.

Joseph F. Leeson, Jr., Bethlehem, for appellant.

George A. Heitczman, J.D., Bethlehem, for appellee.

BEFORE: McGINLEY, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

Mayor Thomas F. Goldsmith appeals from an order of the Court of Common Pleas of Northampton County that denied his motion for judgment on the pleadings, granted the motion for judgment on the

pleadings filed by defendants City Council of Easton, Josephine Smull, Daniel Corpora, John Wagner, Burns Bamford, and Timothy Pickel, and entered judgment in favor of the defendants.[1]

The City of Easton is a municipal corporation organized as a Third Class City under the laws of this Commonwealth, and it operates pursuant to the Optional Third Class City Charter Law, Act of July 15, 1957, P.L. 901, *as amended*, 53 P.S. §§ 41101–41625. Section 304 of the Act, 53 P.S. § 41304, provides that, "[t]he general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State." Under the Act, a city may choose to adopt any of the optional plans of government afforded in the Act and, on November 3, 1970, City of Easton voters approved and adopted the "mayor-council plan A" form of government set forth in Section 401 of the Act, 53 P.S. § 41401.

Under the mayor-council plan A form of government, a city "shall be governed by," *inter alia*, "an elected council, an elected mayor, an elected treasurer and an elected controller...." Section 402 of the Act, 53 P.S. § 41402. Further, with respect to this form of government, Section 410(a) of the Act, 53 P.S. § 41410(a), provides that, "[t]he council shall appoint a city clerk, who shall serve as clerk of the council ..." and Section 410(b) of the Act provides that, *"[t]he council may provide for the manner of appointment of a city solicitor...."* 53 P.S. § 41410(b) (emphasis added). Also under this optional form of government, the Mayor appoints departmental directors with the advice and consent of the council, and the Mayor has the discretion to remove the department heads

after affording them notice and an opportunity to be heard. Section 415(c) and (d) of the Act, 53 P.S. § 41415(c) and (d).

On March 28, 2001, Mayor Goldsmith filed a complaint in the Northampton County Court of Common Pleas pursuant to the Declaratory Judgments Act, 42 Pa. C.S. §§ 7531–7541, for the purpose of determining the legality and validity of a City of Easton ordinance, enacted on February 11, 1976, governing the appointment of both the City Solicitor and the Assistant City Solicitor. This ordinance, Ordinance 2348, which is codified at Article 121 of the City of Easton Ordinances, provides in relevant part:

> 121.01 APPOINTMENT AND ASSISTANTS.
>
> The City Solicitor shall be appointed by resolution of Council. There may be one or more assistants to the City Solicitor as Council may from time to time deem necessary.
>
> . . . .
>
> 121.03 ASSISTANT CITY SOLICITOR.
>
> The Assistant Solicitor shall be employed by resolution of Council and shall serve at the pleasure of Council. He shall not be required to post bond or take an oath of office. He shall perform work assigned to him by the City Solicitor subject to the control and supervision of the City Solicitor.

Specifically, Mayor Goldsmith requested in his complaint that the common pleas court determine and declare to be invalid exercises of the power of Council that portion of Art. 121.01 providing that "[t]he City Solicitor shall be appointed by resolution of Council" and that portion of Article 121.03 providing that "[t]he Assistant So-

---

1. Smull, Corpora, Wagner, Bamford, and Pickel are described as "duly elected Members of the City Council of the City of Easton" in the complaint filed by Mayor Goldsmith. Complaint, para. 2.

licitor shall be employed by resolution of Council and shall serve at the pleasure of Council."

In response, on April 25, 2001, the defendants filed an answer expressly denying that the mayor-council plan A form of government divests City Council of the power to appoint a city solicitor and averring that "the grant of power to City Council giving it the right to provide for the position of solicitor includes by implication the right to make provision for an assistant solicitor." Answer, para. 24. The defendants alleged in new matter that the Mayor had previously acknowledged the validity of the ordinance in question by offering curative amendments for Council's consideration; they also alleged that the Mayor was guilty of laches. On September 12, 2001, Mayor Goldsmith filed a reply to the new matter of the defendants.

Thereafter, on September 25, 2001, the Mayor filed a motion for judgment on the pleadings of plaintiff and, on November 9, 2001, the defendants likewise filed their motion for judgment on the pleadings. In support of his motion, Mayor Goldsmith averred that, due to its lack of clarity, the proper interpretation of 53 P.S. § 41410 is governed by Section 1921(c) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c),[2] and that 53 P.S. § 41410 does not give City Council exclusive authority to appoint the City Solicitor and Assistant Solicitors. In their motion, the defendants averred that there was no genuine issue of

material fact and that the only issue before the court was a question of the interpretation of law.

After the common pleas court considered both of these motions, it determined that the language of 53 P.S. § 41410(b) that "[t]he council may provide for the manner of appointment of a city solicitor" was "clear and unambiguous." *Mayor Thomas F. Goldsmith v. City Council of Easton,* —— Pa. D. & C.4th ——, —— (2002) (No. C0048CV2001002307, filed April 10, 2002), slip op. at 9. The court also determined that City Council had undertaken "a valid legislative action" in vesting itself with the authority to appoint a city solicitor. *Id.* In so deciding, the common pleas court noted that Council had "deviated from the customary practice of personnel appointments under the Mayor–Council Plan A", but that the enabling legislation gave it the authority to do so. The court, therefore, denied Mayor Goldsmith's motion for judgment on the pleadings, granted the defendants' motion for judgment on the pleadings, and entered judgment in favor of the defendants. Mayor Goldsmith then filed an appeal with this court.

On appeal, the Mayor raises one issue for our review. He asks whether the common pleas court erred in deciding that 53 P.S. § 41410(b) vested the sole and exclusive right to appoint and confirm a city solicitor (and assistant solicitors) in City

---

**2.** Section 1921(c) of the Statutory Construction Act provides:

When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

Council.[3] Having reviewed the record and the applicable law, we find that the matter before us has been thoroughly reviewed and addressed in the opinion of the Honorable Jack Anthony Panella. Accordingly, we affirm on the basis of his well-reasoned opinion in the matter of *Mayor Thomas F. Goldsmith v. City Council of Easton,* —— Pa. D. & C.4th —— (2002) (No. C0048CV2001002307, filed April 10, 2002).[4]

Judge SIMPSON did not participate in the decision of this case.

### ORDER

AND NOW, this 11th day of February, 2003, the order of the Court of Common Pleas of Northampton County is AFFIRMED on the basis of the opinion issued by Judge Jack Anthony Panella in *Mayor Thomas F. Goldsmith v. City Council of Easton,* —— Pa. D. & C.4th —— (2002) (Court of Common Pleas of Northampton County, No. C0048CV2001002307, filed April 10, 2002).

Dissenting Opinion By Senior Judge KELLEY.

I respectfully dissent.

Section 410(b) of the Optional Third Class City Charter Law (Law)[1] provides, in pertinent part, that "[t]he council may provide for the manner of appointment of a city solicitor ..." Pursuant to this provision, the City Council enacted Ordinance 2348, which vests the City Council with the sole and exclusive authority to appoint, or remove, the City Solicitor and the Assistant City Solicitor. In this appeal, the Majority affirms the trial court's order based upon the trial court's opinion which states, *inter alia,* that the provisions of Section 410(b) are "clear and unambiguous" and that the City Council took "a valid legislative action" in doing so. *See* Trial Court Opinion at 8–9. I strongly disagree with these notions.

It is well settled that the provisions of the Law vest a local government with substantial authority to regulate its own affairs. *Malloy v. Pfuhl,* 116 Pa.Cmwlth. 461, 542 A.2d 202 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 520 Pa. 592, 551 A.2d 218 (1988). It is intended to confer the greatest power of local self-government, and any specific enumeration of that power is not construed to limit the general description of power in the Law. *Id.* However, it does not permit the local government to adopt ordinances which contravene the enabling act itself. *Id.* So long as the council of the local government acts within its authority under the Law, and does not violate any laws of the Commonwealth, its actions or policies will not be disturbed by the judiciary. *Id.*

Section 411 of the Law states that "[t]he executive power of the city shall be exercised by the mayor." 53 P.S. § 41411. To this end, Section 412 of the Law provides, in pertinent part, that "[t]he mayor shall

---

**3.** In this case involving a motion for judgment on the pleadings, the scope of our review is limited to whether the common pleas court committed an error of law. *Ithier v. City of Philadelphia,* 137 Pa.Cmwlth. 103, 585 A.2d 564, 565 (1991). A motion for judgment on the pleadings is in the nature of a demurrer wherein the opposing party's well-pled allegations are viewed as true, but only those facts that are specifically admitted by the objecting party may be weighed against him. *Id.* A motion for judgment on the pleadings may be granted only where no material facts are in issue and the law is clear. *Id.*

**4.** We note that the Common Pleas Court of Cambria County in *Pfuhl v. Kleinmeyer,* 75 Pa. D. & C.2d 337 (1976), reached a contrary result. We are, of course, not bound by *Pfuhl,* and, as it conflicts with the decision we reach today, we expressly disavow it.

**1.** Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. § 41410(b).

enforce the charter and ordinance of the city and all general laws applicable thereto . . .", and that "[h]e shall supervise all of the departments of city government . . ." 53 P.S. § 41412. In addition, Section 415 of the Law provides, in pertinent part, that "[e]ach department shall be headed by a director who shall be appointed by the mayor with the advice and consent of the council . . .", and that "[t]he mayor may, in his discretion, remove any department head after notice and an opportunity to be heard . . ." 53 P.S. § 41415(c), (d). Indeed, it has been long recognized that the power of appointment is intrinsically and historically an executive function. *See, e.g., Daly v. Hemphill,* 411 Pa. 263, 191 A.2d 835 (1963).

In *Moore v. Reed,* 126 Pa.Cmwlth. 283, 559 A.2d 602 (Pa.Cmwlth.1989), *petition for allowance of appeal denied,* 527 Pa. 657, 593 A.2d 428 (1991), the Mayor of the City of Harrisburg issued a park permit to a baseball club for the use of a city-owned stadium. The Harrisburg City Council initiated an action for declaratory judgment and injunctive relief, alleging that the Mayor had no authority to issue the permit. The City Council sought a declaration that the permit was, in actuality, a contract, and that the Mayor had no authority to negotiate contracts on behalf of the City without the authority or approval of the City Council. The trial court granted the Mayor's motion for judgment on the pleadings, holding that, pursuant to the Law, the Mayor was vested with the authority to negotiate, enter into negotiations, sign, modify, and cancel contracts on behalf of the City.

On appeal, in reversing the trial court's grant of judgment on the pleadings, this Court stated the following, in pertinent part:

Harrisburg is a Third Class City under the Third Class City Code.[2] It adopted Plan A of the [Law]. Under this plan, section 407 of the Law, 53 P.S. § 41407, states, "[T]he legislative power of the city shall be exercised by the city council, except as may be otherwise provided by general law." Section 411 of the Law, 53 P.S. § 41411 provides, "The executive power of the city shall be exercised by the mayor", and section 413(c) of the Law, 53 P.S. § 41413(c), provides that "[a]ll bonds, notes, contracts and written obligations of the city shall be executed on its behalf by the mayor and the controller."

A fair reading of the [Law] provides for a separation of power between the legislature and executive functions. This is inherent in our form of government and one branch cannot usurp the functions of the other, unless otherwise expressly provided. *Bailey v. Waters,* 308 Pa. 309, 162 A. 819 (1932). The issue, therefore, is whether the act of the Mayor was an administrative act or legislative act.

The authority to negotiate a valid and binding contract for a municipality is vested in the City Council. It is a legislative function. Without the assent of City Council, the municipality is not bound. *Waymart Water Co. v. Waymart,* 4 Pa.Super. 211 (1897).

Here, while the document may have been described as a "Park Permit", in actuality it was a contract. It was more than a mere license to do some act. A reading of it shows a series of rights and obligations on the part of the parties which is the essence of a contract. There is nothing to indicate that it was intended in the ordinance that this function of negotiating a contract was delegated to the Mayor. In *Symon v. Tom-*

---

**2.** Act of June 23, 1931, P.L. 932, as amended, 53 P.S. §§ 35101–39701.

*ljanovic,* [454 A.2d 234 (Pa.Cmwlth. 1983) ], we held that the term "execute" means to discharge the ministerial duties relating to contracts and does not embrace negotiations.

*Moore,* 559 A.2d at 603–604.

In the instant case, to my mind, the City Council has likewise infringed upon the executive powers possessed by the Mayor under the Law by enacting Ordinance 2348, which vests City Council with the sole and exclusive authority to appoint, or remove, the City Solicitor and the Assistant City Solicitor.[3] Although Section 410(b) of the Law provides that "[t]he council may provide for the manner of appointment of a city solicitor ...", I do not believe that it confers upon the City Council the authority to completely exclude the executive from his proper role in the appointment process.[4]

Rather, I believe that Section 410(b) confers upon the City Council the authority to enact an ordinance which properly respects the authority of the executive explicitly conferred under the Law, and which involves the Mayor in the appointment process.[5,6] Because Ordinance 2348 vests the City Council with the sole and exclusive authority to appoint, or remove, the City Solicitor and the Assistant City Solicitor, and completely divests the Mayor of his executive powers in the appointment process, I believe that the ordinance is in violation of the relevant provisions of the Law.

---

**3.** *See, e.g., Malloy,* 542 A.2d at 204 ("[I]t is beyond argument that Council must respect the separation of executive and legislative authority ...").

**4.** Contrast the permissive language of Section 410(b) with the mandatory language of Section 410(a) which states, in pertinent part, that "[t]he council *shall* appoint a city clerk ..." 53 P.S. § 41410(a) (emphasis added).

**5.** See, e.g., Art. XIII, § 1 of the First Class City Code, Act of June 25, 1919, P.L. 581, as amended, 53 P.S. § 12461 ("[T]here shall be a department of law of which the city solicitor shall be the head. He shall be appointed by the mayor, by and with the advice and consent of the council ..."); Art. XIV, § 6 of the Second Class City Code, Act of March 7, 1901, P.L. 20, as amended, 53 P.S. § 22226 ("[T]he appointments hereafter to be made of the heads of all executive department of said city, now by law authorized to be made of the heads of all executive departments of said city, now by law authorized to be made by the mayor thereof, shall be subject to the approval of said council, to be evidenced by resolution, which shall receive the affirmative votes of a majority of all the members thereof ...").

**6.** In the opinion filed in support of its order, the trial court states, in pertinent part:

> [W]hile it is true that City Council, in vesting itself the authority to appoint the solicitor, deviated from the customary practice of personnel appointments under the Mayor– Council Plan A, we find it a valid legislative action under the [Law]. We also cannot lose sight of the fact that unless a third-class city chooses to operate under the [Law], a council has the unquestionable right to appoint the city solicitor [under the Third Class City Code].

Trial Court Opinion at 9 (footnote omitted).

It is true that Section 1601 of the Third Class City Code vests the city council with the exclusive authority to appoint a city solicitor. Indeed, Section 1601 provides, in pertinent part, that "[t]he council of each city shall ... appoint a city solicitor ..." 53 P.S. § 36601.

However, Section 1002 of the Third Class City Code states that "[t]he legislative power of every city shall be vested in a council composed of the mayor and four councilmen ...", and Section 1003 states, in pertinent part, that "[t]he mayor shall be the president of the council, and a member thereof, and shall have the same rights and duties, including the introduction of bills and the making of motions, as pertain to councilmen." 53 P.S. §§ 36002, 36003. Thus, unlike the Law, the Third Class City Code does not make such an explicit distinction between the powers conferred upon the executive and legislative departments. Moreover, the foregoing provisions of the Third Class City Code explicitly provide the executive with a role in the appointment process.

Accordingly, unlike the majority, I would reverse the order of the trial court.