646 A.2d 22

**Joseph R. LATCH, III, Appellant,**

**v.**

**CITY OF JOHNSTOWN and Herbert Pfuhl, Jr., Mayor of the City of Johnstown.**

Commonwealth Court of Pennsylvania.

Argued June 10, 1994.

Decided July 13, 1994.

James R. Di Francesco, for appellant.

Richard J. Green, Jr., for appellees.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Joseph R. Latch, III (Latch) appeals from the order of the Court of Common Pleas of Cambria County that dismissed Latch's "complaint and amended complaint" against the City of Johnstown and Herbert Pfuhl, Jr., Mayor of Johnstown. We affirm.

City Council (Council) passed Ordinance No. 4507, establishing the number of utility person positions at eleven for the fiscal year 1990. On October 9, 1990, the City hired Latch as a utility man to fill a vacancy in the Bureau of Sewage (Sewage), which had existed since April 1990.[1] On October 24, 1990, Council introduced a bill which amended Ordinance No. 4507, reducing the number of utility men from eleven to ten. At its November 7, 1990 meeting, Council unanimously passed the amendment as Ordinance No. 4550, thus reducing the number of utility men to ten. This occurred less than one month after Latch's hiring. Because Latch was a probationary employee, and without any seniority under the collective bargaining agreement (CBA), he was effectively terminated.

In December 1990, while Council was working on its budget and accompanying wage and salary ordinance for 1991, it considered reestablishing the number of utility men in the Bureau to eleven. On March 13, 1991, Council passed Ordinance No. 4568, reestablishing the number of utility men at eleven. Latch, however, was not re-hired as the eleventh utility man.

1. Latch had been selected from a list of candidates for the position. Council expressed concern regarding the hiring of Latch, who was the son of the Bureau's Director. A charge of unethical conduct was lodged against Latch's father but was dismissed. Latch's father was exonerated from any unethical practice.

Latch then filed a complaint in which he requested a mandatory injunction requiring the City to reinstate him retroactively to the position of utility man with full back pay and benefits. Latch's amended complaint further claimed damages in the amount of $777,407.52.

While not averring that Council's actions were politically motivated, Latch contended at trial that its actions were improper. However, the trial court found to the contrary and held that, as a probationary employee, Latch could not benefit from the CBA which existed between the City's Bureau and the United Steel Workers of America, AFL–CIO (Union) and thus, was not entitled to be recalled.

On appeal to this Court,[2] Latch argues that the trial court erred as a matter of law in holding that Council's actions were not politically motivated and that Latch was not covered by the CBA.

Latch first asserts that Council's actions were politically motivated and, therefore, his position could not be eliminated without a finding of just cause. Latch argued before this Court, primarily, that the Council was without legal authority to hire, terminate, suspend or lay-off employees, which authority rests with the Mayor in the exercise of his executive powers. We do not agree.

Latch cites Sections 411 and 415 of the Optional Third Class City Charter Law (Law), Act of July 15, 1957, P.L. 901, 53 P.S. §§ 41411 and 41415, to support his position that Council acted improperly. Section 411 of the Law merely states that the "executive power of the city shall be exercised by the mayor." Section 415 of the Law concerns the functions of the city treasurer, departments, department heads, and subordinate officers and employees. Neither of these sections

**2.** Our scope of review of a trial court's dismissal of a complaint in equity is limited to whether or not the trial court erred as a matter of law or abused its discretion. *Bronson v. Lechward,* 155 Pa.Commonwealth Ct. 206, 624 A.2d 799 (1993).

limits the power of Council to pass amendments concerning their budgetary and fiscal policy.[3]

■ Latch's argument that Council's actions were improper is actually a collateral attack on the ordinance, and further was not properly raised in his complaint. Latch never challenged the ordinance upon its passage but merely requested reinstatement in his complaint. Further, Latch never challenged the procedural aspect of the ordinances under the Sunshine Act, Act of July 3, 1986, P.L. 388, 65 P.S. §§ 1–16. Therefore, we hold that none of Council's actions were precluded by statute and Latch did not present any evidence to demonstrate any fraudulent or political motives that would require the rescinding of Ordinance No. 4568.

Next, Latch argues that even though he was a probationary employee that after the eleventh position of utility man was reestablished, he should have been "reemployed after lay-off" under the CBA.

■ The pertinent parts of the CBA applicable here state as follows:

## Article XV
### *SENIORITY.*

*Section 2: Probationary Period.* Employees hereafter employed by the City shall not be considered regular employees of the City until after a probationary period of six (6) months. Employees retained after the probationary period acquire seniority status dating from the first day of employment. *Probationary employees are entitled to all benefits covered by this agreement.*

\* \* \* \* \* \*

*Section 4: Re–Employment After Lay-off.* Each employee on lay-off shall be notified according to seniority by the City of the first opportunity for re-employment, such notice of recall to be given in writing by registered mail, return

---

**3.** In fact, at the time of the passage of Ordinance No. 4550, Council also passed an ordinance reducing the salary of the city clerk. (144a).

receipt requested, to such employee's last known address filed with the City. Any employee who fails to accept an offer for re-employment within ten (10) days after receipt of notice by registered mail shall thereupon forfeit his seniority rights with respect to employment. The right of an employee to recall shall lapse after four (4) years from the date of lay-off.

*    *    *    *    *    *

*Section 9:* The parties agree there will be no lay-off provision in the Bureau of Sewage permanently.

(94a, 96a) (emphasis added). Latch asserts that the language that a probationary employee is "entitled to all benefits covered by this agreement," means that he must "benefit" from the re-call provisions of the CBA. Again we disagree.

First, we must note that Latch was not on lay-off, but his position was eliminated by the action of Council, a proper function of Council as previously discussed. Latch was a probationary employee and not a member of the Union. While probationary employees receive the same "benefits" as non-probationary employees, the fact is clear that Latch was a probationary employee not in the Union and thus, not covered by the CBA. Therefore, we hold that the trial court correctly held that Latch, as a probationary employee, was not covered by the CBA.

Accordingly, we affirm.

# *O R D E R*

AND NOW, this 13th day of July, 1994, the order of the Court of Common Pleas of Cambria County in the above-captioned matter is hereby affirmed.