**CITY OF ERIE (Council), Petitioner**

v.

**DEPARTMENT OF ENVIRONMENTAL PROTECTION, Respondent.**

**City of Erie (Council), Petitioner**

v.

**Department of Environmental Protection, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 2, 2004.

Decided Feb. 25, 2004.

Wendy A. Mullen, Meadville, for petitioner.

Jennifer E. Gornall–Rouch, Erie, for intervenor, Erie City Water Authority.

Kenneth A. Zak, Erie, for intervenor, Mayor and Solicitor.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, JIULIANTE, Senior Judge.

OPINION BY Judge PELLEGRINI.

The City Council for the City of Erie (City Council), purportedly acting on behalf of the City of Erie, petitions for review of two decisions of the Environmental Hearing Board (Board) finding that City Council lacked standing to represent the City of Erie in an appeal brought without the approval and authorization of the Mayor of the City of Erie and granting the City of Erie's Solicitor's (City Solicitor) motion to withdraw appeal.

In 1962, the City of Erie became an Optional Third Class City "Mayor–Council Plan A" form of government as provided by Article IV of the Pennsylvania Optional Third Class City Charter Law (Mayor–Council Plan A), Act of July 15, 1957, P.L. 901, *as amended*, 53 P.S. §§ 41401–4142. Previously, it was organized under the Third Class City Code, Act of June 21, 1931, P.L. 932, *as amended*, 53 P.S. §§ 35101–39701. When it became an Optional Third Class City, the City of Erie changed from the "commission form" of city government, removed the mayor (Mayor) as a member of the city council and vested him with the "executive power" of the city, 53 P.S. § 41411, and council with the "legislative power." 53 P.S. § 41407.[1]

1. Under the Third Class City Code, there is no true "separation of power" between the executive and legislative branches. For example, the Third Class City Code provided that "the *legislative power* of every city shall be vested in a council composed of the mayor and four councilmen." 53 P.S. § 36002. (Emphasis added.) The Mayor not only was a member of council, but he was also deemed to be the president of that body and was granted "the same rights and duties, including the introduction of bills and the making of motions, as pertain to councilmen." 53 P.S. § 36003. Although the Mayor was also designated as the chief executive, 53 P.S. § 36202, because he was a member of council he had "... no right of veto." 53 P.S. § 36007. The Mayor was required to sign all ordinances of council, but was not required to sign all bonds, notes, contracts and written obligations of the city to become enforceable. *See*, 53 P.S. §§ 36010, 36901. Finally, council had the authority to "retain special counsel for particular proceedings or matters of the city." 53 P.S. § 36701.

Regarding the executive branch under the Third Class City Code, the "executive and administrative powers, authority, and duties" of the city government were distributed among five departments. 53 P.S. § 36101. It was council, as opposed to the Mayor, which had the authority to determine the powers and duties to be performed by and assigned to these departments and the particular officers and employees of the departments. 53 P.S. § 36103. The Mayor was given the duty of executing and enforcing the laws of the city, 53 P.S. § 36203, but the Mayor had the authority only to "supervise" the conduct of city officers. Any violations or

In 1966, City Council created the Erie City Water Authority (ECWA), now known as the Erie Water Works. In 1990, the City of Erie passed an ordinance authorizing a lease of its water assets to the ECWA, and an Agreement of Lease (Agreement) was executed on April 1, 1991. In April 2002, the ECWA filed two permit applications with the Department of Environmental Protection for the construction of fluoridation facilities at the Sommerheim and Chestnut Street water treatment plants. Some members of City Council disagreed with the concept of fluoridating the public water supply and requested an opinion from the City Solicitor as to whether City Council could pass a resolution ordering the ECWA to refrain from doing so. By letter dated July 22, 2002, a deputy City Solicitor issued a legal opinion, which incorporated by reference two legal opinions from the prior City Solicitor and the solicitor of the ECWA, stating that it would not interfere with the ECWA's actions because they were within the parameter of the law. Despite the City Solicitor's legal opinion, on October 2, 2002, a majority of the City Council adopted a "resolution"[2] directing the City Solicitor to issue a legal opinion to the ECWA informing it that its decision to add fluoride was a direct violation of the Agreement. Because the deputy City Solicitor did not believe that City Council had the express or implied authority to dictate the ECWA's internal course of action, she declined to issue the legal opinion.

On October 9, 2002, City Council passed two "resolutions" hiring legal counsel to represent it in any court proceedings involving the ECWA's fluoridation of the water supply and "breach of the Agreement." On November 21, 2002, an "Employment Agreement" was entered into between the "City of Erie," as opposed to City Council, and the Tinko Law Group for the provision of legal services "to and on behalf of the City" regarding the fluoridation issue. (Reproduced Record at 250–255a.) Under its terms, the Tinko Law Group's legal fees and expenses were to be paid by a third party. The Employment Agreement was executed only by James Thompson, City Council President, and James Klemm, City of Erie Clerk.

On December 21, 2002, Department of Environmental Protection (DEP) issued a water supply permit to ECWA for its Sommerheim facility, and on February 21, 2003, DEP issued a permit for its Chestnut Street facility. The Tinko Law Group filed an amended notice of appeal for each issued permit, challenging DEP's grant of ECWA's permit applications.[3] Its pleadings stated that the action was expressly brought on behalf of the "City of Erie, Appellant." Averring that without the assent of either the Mayor or the City Solicitor, the Tinko Law Group lacked standing to represent the City in the appeal, the City Solicitor then filed motions to withdraw the appeal on January 30, 2003, and May 14, 2003.

neglect of duty discovered or reported to the Mayor were to be reported and acted upon by council. 53 P.S. § 36205. Clearly, under the Third Class City Code, the power of the "executive" branch, i.e., the Mayor, was entwined with the authority and responsibilities of the "legislative" branch.

2. The resolution was not signed by the Mayor of the City of Erie.

3. In its second notice of appeal, the Tinko Law Group, along with appealing on behalf of the City of Erie, also added a private party, James Potratz, to the appeal. Because the Board's opinion and order withdrawing City Council's appeal did not affect the merits of Mr. Potratz's action as a private citizen, the appeal was allowed to proceed in his name only.

■ Addressing whether a private law firm paid by a third party and retained by City Council, without the approval and authorization of the Mayor, may file a notice of appeal before the Board, the Board granted the City Solicitor's motions to withdraw appeal, concluding that:

[P]assing a resolution and executing an employment agreement with a private attorney does not enable City Council to wield the executive power of the City of Erie. The filing of litigation on the City of Erie's behalf is the province and responsibility of [the Mayor] through [the City Solicitor's Office].

(Board's May 7, 2003 decision, at 4–5.) City Council now petitions this Court for review.[4]

City Council contends that the Board erred in finding that it lacks the power to retain special counsel to represent the City of Erie under Mayor–Council Plan A. It argues that even though the City of Erie is now an Optional Third Class City, under Section 301 of the Optional Plan Law, 53 P.S. § 41301, the provisions of the Third Class City Code still apply unless they are inconsistent with the Optional Plan or until they are modified or repealed as provided by law. It then argues that Section 1610 of the Third Class City Code, 53 P.S. § 36610,[5] grants it the express authority to retain special counsel to represent the City of Erie and, even if it did not, that it had the implied authority to retain special counsel. The Mayor and Solicitor counter that such authority is inconsistent with the City of Erie's Optional Plan because it

vests sole power in them to bring and control litigation.

■ The Optional Third Class City Charter Law (Charter Law), Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. §§ 41101–41625, was passed to give third class cities "the right and power to adopt one of several plans of optional charters and to exercise the powers and authority of local self-government subject to certain restrictions and limitations." 53 P.S. § 41101. The Charter Law also provides that each city that elects to operate under it has the full power to "[o]rganize and regulate its internal affairs, and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their term, tenure and compensation." 53 P.S. § 41303(1). This grant of "full power" as provided by the Charter Law is realized through the promulgation of one of the "optional plans," such as the "Mayor–Council Plan A" adopted by the City of Erie.

No matter what optional plan is adopted under Section 301 of the Optional Plans Law, 53 P.S. § 4130, provides in relevant part:

The plan adopted and the provisions of this act common to optional plans shall become the organic law of the city at the time fixed by this act. So far as they are consistent with the grant of powers and the limitations, restrictions and regulations hereinafter prescribed, they shall supersede any existing charter, and all acts and parts of acts, local, special or general, affecting the organi-

---

4. This Court's standard of review of a Board's decision is whether findings of fact were supported by substantial evidence and whether constitutional violations or errors of law were committed. *Westinghouse Electric Corporation v. Department of Environmental Protection,* 745 A.2d 1277 (Pa.Cmwlth.2000).

5. That section provides:

Council may, at its discretion, retain special counsel for particular proceedings or matters of the city and fix his compensation by resolution.

53 P.S. § 36610.

zation, government and powers of such city to the extent that they are inconsistent or in conflict therein. **All existing acts or parts of acts and ordinances affecting the organization, government and powers of the city not inconsistent or in conflict with the organic law so adopted shall remain in full force until modified or repealed as provided by law.** (Emphasis added.)

The Optional Plan that the electors of the City of Erie adopted was the "Mayor–Council Plan A" form of government. Rather than the previous "commission" form of government that it had as a third class city, this form of government provided for a clear separation of the executive, i.e., the Mayor and the legislative, i.e., City Council, bodies. Specifically, the "legislative power" of the city "shall be exercised by the city council, except as otherwise may be provided by law." 53 P.S. § 41407. In addition, council retained the authority to "provide for the manner of appointment of a city solicitor," 53 P.S. § 41410(b), but was not expressly given the power to hire special counsel. The "executive power" of the city was to be exercised solely by the mayor," 53 P.S. 41411, and the mayor was authorized to "enforce the charter and ordinances of the city and all general laws applicable thereto." 53 P.S. § 41412. Although allowed to appear and participate before council, the mayor was no longer able to vote on matters before council but, instead, was granted the right to veto legislation. 53 P.S. § 41413(a)(b). In addition, the mayor was given the authority to appoint, with the consent of council, and remove, without the consent of council, department heads. 53 P.S. § 41415. Finally, the mayor was

vested with the authority to execute "all bonds, notes, contracts and written obligations of the city." 53 P.S. § 41413(c).

To implement "Mayor–Council Plan A," "The Administrative Code of the City of Erie" (Erie Administrative Code) was enacted. Pursuant to its right under 53 P.S. § 41410(b), City Council vested in the Mayor the power to appoint a City Solicitor with its consent. Section 107.A.1 of the Erie Administrative Code.[6] The Erie Administrative Code also sets forth the City Solicitor's duties by incorporating the "duties and responsibilities" of the City Solicitor as provided in "Article XVI of the Third Class City Code." *Id.* That Article provides that the City Solicitor shall "have the superintendence, direction and control of the law matters of the city," 53 P.S. § 36602, and that he shall:

Commence and prosecute *all and every* suit or suits, action or actions, brought by the city, for or on account of any of the estates, rights, trusts, privileges, claims, or demands, of the same, as well as defend *all* actions or suits against the said city or any officer thereof, wherein or whereby any of the estates, rights, privileges, trusts, ordinances, or acts of the city or any department thereof, may be brought in question before any court. He shall have like duties before any administrative agency or other judicial or quasi-judicial body. He shall do all and every professional incident to the office which he may be lawfully authorized and required to do by the mayor, or by any ordinance or resolution of the council.

53 P.S. § 36603. (Emphasis added.)

Absent another authorization from those provisions, it is clear that under the "May-

---

**6.** Section 107.A.1 of the Erie Administrative Code provides:

*City Solicitor.* The Mayor shall appoint a City Solicitor with the advice and consent of the Council. The duties and responsibilities of

the City Solicitor shall be those set forth in Article XVI of the Third Class City Code and such other duties and functions consistent with the same that Council may [by] ordinance provide.

or–Council Plan A" form of government, the executive power is vested solely in the Mayor, and the power to bring and commence lawsuits is vested solely in the City Solicitor.

City Council argues that such authorization is contained in Section 1610 of the Third Class City Code which expressly permits it to hire special counsel by resolution. 53 P.S. § 36610. Assuming that City Council's interpretation of that provision is correct, as set forth above, provisions of the Third Class City Code are only applicable to the City of Erie to the extent they are not inconsistent with the "organic" law of the city. 53 P.S. § 41301; 53 P.S. § 41401. Here, the "organic" law of the city provides that: (1) it is the Mayor who has the power to appoint the City Solicitor; (2) it is the Mayor who is granted the authority to execute and enforce the laws and ordinances of the city; and (3) by expressly incorporating the duties of the City Solicitor from the Third Class City Code, it is the City Solicitor who is empowered to bring "all and every" suit "brought by the city."

Regarding whether City Council had the implied authority to retain counsel, as was evident from our analysis above, nowhere in the Charter Law is the legislative branch vested with the power to execute and enforce the laws and ordinances of the city; to the contrary, this power rests solely with the Mayor. 53 P.S. §§ 41411, 41412. By challenging DEP's issuance of the permit, City Council is essentially claiming a parallel right to wield the executive power of the City of Erie and bring suit on its behalf. If all City Council needs to do whenever it desires to "execute" the laws of the city is to hire special

counsel by "resolution," there will be an inevitable struggle for power between the two branches of government whenever a controversial issue arises which will, as the Board articulated, "result in a mad dash to the courthouse to file an action first," on behalf of the City of Erie. (Board's May 7, 2003 decision at 4.) Such a result is inconsistent with the electorate in adopting "Mayor–Council Plan A" to separate the executive and legislative powers between the Mayor and City Council, respectively. Because City Council does not have the express or implied authority to retain special counsel, and only the Mayor can authorize legal action on behalf of the City of Erie and only the City Solicitor can initiate that action, the Board properly granted the City Solicitor's motion to withdraw the appeal.[7]

Accordingly, the orders of the Board are affirmed.

### ORDER

AND NOW, this *25th* day of *February,* 2004, the orders of the Environmental Hearing Board, at No. 2003–018–R, dated May 7, 2003, and No.2003–084–R, dated July 31, 2003, are affirmed.

---

7. City Council also contends that the Board erred in finding that the City Solicitor's motions to withdraw appeal were not dispositive motions and that the Board's opinions were not supported by appropriate legal authority. Because we have decided that City Council was not properly before the Board, we need not reach those issues.