# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

BT Property, LLC,               :
                 Appellant       :
                                :
           v.             :       No. 827 C.D. 2022
                                :
Luzerne County Assessor's Office, :
Pittston Area School District,  :
Pittston Township, and          :
Luzerne County                  :       Argued: June 4, 2024


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MATTHEW S. WOLF, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                  FILED: August 21, 2024

        BT Property, LLC (BT) appeals from an order of the Court of Common Pleas of Luzerne County (trial court) entered on June 22, 2022, sustaining Preliminary Objections filed by the Luzerne County Assessor's Office (Assessor's Office), the Pittston Area School District, Pittston Township and Luzerne County (County) (collectively, Defendants) and dismissing BT's "Complaint in Mandamus to Compel the Reversal of Real Estate Tax Assessment Increases for Tax Years 2009-2020 and the Voiding of Supplemental Real Estate Tax Bills for Those Tax Years" (Mandamus Complaint). For the reasons that follow, we reverse.

## BACKGROUND

The facts surrounding this action are not in dispute. BT is the owner of an industrial property located in Pittston Township, Luzerne County (Property). In 2007, the Property had an assessed value of $138,250.00. In that same year, BT filed a tax assessment appeal with the Luzerne County Board of Assessment Appeals (Board) for the 2008 tax year. The Board denied the tax assessment appeal and the Property retained the assessed value of $138,250.00. BT filed a "Real Estate Tax Assessment Appeal" of the Board's decision with the trial court at Case No. 2007-13551. Reproduced Record (R.R.) 3a-4a.

In 2008, while BT's tax assessment appeal was still pending, the County conducted a county-wide tax reassessment. On July 1, 2008, the Board sent a "Notice of Change of Assessment and Change of Pre-Determined Ratio" to BT which set the "2008 Base Year Market Value" and "Assessed Value (2008 Market x 100%)" for the Property at a "Total" value of $1,481,300.00. R.R. 103a. BT did not file an appeal of the assessed value and the Assessor's Office updated its database to reflect the $1,481,300.00 value to be utilized for the 2009 tax year. Meanwhile, on February 25, 2009, the trial court entered an order in Case No. 2007-13551, reflecting a stipulated settlement between the parties wherein they agreed that the Property shall be assessed at $74,100.00 for tax year 2008. *Id.* at 101a.

In response to the February 25, 2009 order, the Assessor's Office mistakenly changed the Property's assessed value from $1,481,300.00 (per the 2008 county-wide tax reassessment) to $74,100.00 (per the court-ordered settlement amount for year 2008 only) for the tax year 2009.[1] On April 3, 2009, the Assessor's Office mailed BT a notice titled "Change Per Court Order" (2009 Notice) advising

---

[1] The County refers to this action as an "encoding error," while BT characterizes it as a "clerical error." Reproduced Record (R.R.) at 4a.

2

BT of the new assessed value of $74,100.00. R.R. 105a. From 2009 through 2020, the Assessor's Office issued BT tax bills using the $74,100.00 assessment figure. The Assessor's Office did not discover the error until on or around April 23, 2021. *Id.* at 5a. On that date, the Assessor's Office mailed BT another notice, again titled "Change Per Court Order" (2021 Notice), advising BT that the Property's "future tax billing basis" will be $1,481,300.00, effective as of January 1, 2021, for "County/Munic[ipal taxes]" and as of July 1, 2021 "for School [taxes.]" *Id.* at 107a. The 2021 Notice also stated: "This notice may or may not result in the generation of a supplemental bill being issued on May 1 or September 1 of this year or next year." *Id.* It did not provide any indication that the Assessor's Office would apply the $1,481,300.00 assessment value retroactively to years 2009-2020.

Nevertheless, on May 28, 2021, the County mailed BT "County/Municipal and School Supplemental" tax bills (supplemental tax bills) for the years 2009 through 2020. R.R. 73a-97a. The supplemental tax bills were calculated using the difference between the assessed values of the Property ($1,481,300.00 − $74,100.00 = $1,407,200.00) multiplied by the millage for each corresponding year, for each taxing body. *Id.* The supplemental tax bills did not include any penalty or interest on their face, but rather provided time periods during which the bills could be paid at a discount, at face value, or at penalty. *Id.*

BT filed its Mandamus Complaint on November 18, 2021. R.R. 63a-71a. The Mandamus Complaint alleges that the Assessor's Office exceeded its authority in retroactively increasing the assessments for the 2009-2020 tax years and directing the supplemental tax bills to be issued. *Id.* at 68a. BT maintains that the Assessor's Office erroneously relied on the trial court's February 25, 2009 order in Case No. 2007-13551 as a basis to retroactively increase BT's past assessments,

3

despite that order only pertained to the 2008 tax year. *Id.* Citing Section 8816 of the Consolidated County Assessment Law (Assessment Law), 53 Pa.C.S. §8816,[2] BT argues that upon the discovery of a clerical error, the Assessor's Office is only empowered to make current year assessment increases but has no authority to make retroactive increases for past tax years. Because the Assessor's Office refuses to retract the supplemental tax bills, BT maintains it has no other adequate remedy at law and asked the trial court to enter "a judgement [sic] in mandamus against [] Defendants striking the 2009-2020 retroactive assessment increase and corresponding supplemental tax bill[s] on [BT's] real property." R.R. 69a-70a.

The County filed Preliminary Objections (in which the remaining Defendants joined) demurring to BT's Mandamus Complaint and alleging BT failed to exhaust statutory remedies. *See* Pa.R.Civ.P. 1028(a)(4), (7). On the demurrer, Defendants alleged that Section 8816 of the Assessment Law is inapplicable to the instant matter. They argued that Section 8816 applies only to the correction of clerical errors *in the assessment* of a property. R.R. 50a (emphasis in original). They insisted that there was no such error here, as the Property was correctly assessed at

---

[2] Section 8816, titled "Clerical and mathematical errors," provides:

**(a) Correction.--**If, through mathematical or clerical error, an assessment is higher than it should have been and taxes are paid on such incorrect assessment, the county assessment office, upon discovery of the error and correction of the assessment, shall so inform the appropriate taxing district or districts, which shall make a refund to the taxpayer or taxpayers for the period of the error or six years, whichever is less, from the date of application for refund or discovery of the error by the board. Reassessment, with or without application by the owner, as a decision of judgment based on the method of assessment, shall not constitute an error under this section.

**(b) Increases.**--Nothing in this section shall be construed as prohibiting an assessment office from increasing an assessment for the current taxable year upon the discovery of a clerical or mathematical error.

4

$1,481,300.00 since tax year 2009. Defendants posited that "[t]he only error, if any, was in the subsequent notices sent to BT due to an encoding error" and inferred that BT could have sought a hearing before the Board pursuant to Section 8845 of the Assessment Law but failed to do so.[3] *Id.* Defendants submit that the County has no duty to retract the supplemental tax bills, and thus, mandamus cannot lie. *Id.*

As to exhaustion of statutory remedies, Defendants argued that following the 2008 county-wide reassessment, BT's Property was accurately assessed at $1,481,300.00 for the 2009 tax year and that a proper Notice of Reassessment was mailed to BT on July 1, 2008. BT could have, pursuant to Section 8844(b) of the Assessment Law,[4] appealed the reassessed value at that time, but it did not. R.R. 49a. Similarly, BT did not file an appeal when it received the supplemental tax bills from the County; thus, Defendants reasoned, BT failed to exhaust the statutory remedies afforded by Section 8844(b) of the Assessment Law.

Following oral argument, the trial court sustained Defendants' Preliminary Objections and dismissed BT's Mandamus Complaint. In reaching its

---

[3] Section 8845 of the Assessment Law states that "[n]o defect in the service of any notice shall be sufficient grounds for setting any assessment aside, but, upon proof of defective notice, the aggrieved party or taxing district shall have the right to a hearing before the board." 53 Pa. C.S. § 8845.

[4] Section 8844 addresses "[n]otices, appeals and certification of values." Section 8844(b) provides:

> **(b) Mailing and notice of appeal.--**The notice shall be mailed within five days from the date the county assessment office makes the change or addition to its official records. The notice shall state that any persons aggrieved by the assessment and the affected taxing districts may file an appeal to the board within 40 days of the date of the notice . . . .

53 Pa.C.S. § 8844(b).

decision, the trial court emphasized it was not convinced that Section 8816 of the Assessment Law supports mandamus relief in this case. The trial court stated:

> While [Section 8816 of the Assessment Law] does address clerical and mathematical errors, it does so in the context of refunds for years where a taxpayer has overpaid based on an assessment being higher than it should have been and only allows "increasing an assessment" for a current taxable year. As Defendants stress, there has not been an "increase" in the assessment of the [P]roperty since 2009 (it has remained $1,481,300.00) but rather an incorrect figure was used because of the confusion resulting from the series of events surrounding [BT's] 2008 tax year [a]ppeal and the concurrent county-wide reassessment as outlined above. Defendants cite to [Section 8845 of the Assessment Law] which reads "[n]o defect in service of any notice shall be sufficient grounds for setting any assessment aside, but, upon proof of defective notice, the aggrieved party or taxing district shall have the right to a hearing before the board." There are no "Notes of Decisions" following this section, and there is no indication that service of any notices was not properly made upon [BT]. It could be argued, however, that the April 3, 2009 Notice . . . was "defective" insofar as it misapplied the February 25, 2009 Court Order. And more importantly, in the context of a mandamus action, it clearly indicates that any aggrieved party shall have the right to seek a remedy with the Board. In other words, the Court believes that [BT] had a viable statutory remedy ([Section 8845 of the Assessment Law]) which it failed to exercise or exhaust.

R.R. 6a-7a (citations omitted).

Finally, in addition to concluding that BT failed to exhaust its statutory remedy, the trial court intimated that BT was not entitled to mandamus relief under the doctrine of "unclean hands." R.R. 7a-8a.

6

## ISSUES

On appeal to this Court, BT asserts that the trial court erred in sustaining Defendants' Preliminary Objections and dismissing its Mandamus Complaint. Specifically, BT argues the trial court erred in concluding that the Assessor's Office may make retroactive increases to a property's tax assessment value under Section 8816 of the Assessment Law and that BT failed to exhaust statutory remedies.

## DISCUSSION

Our review of a trial court's order sustaining preliminary objections is limited to determining whether the trial court erred as a matter of law or abused its discretion. *Wilson v. Marrow*, 917 A.2d 357, 361 n.3 (Pa. Cmwlth. 2007). When the Commonwealth Court reviews a lower tribunal's order sustaining preliminary objections in the nature of a demurrer, our review is plenary. *Delaware Riverkeeper Network v. Sunoco Pipeline L.P.*, 179 A.3d 670, 680 n.5 (Pa. Cmwlth. 2018) (en banc). In order for a trial court to sustain preliminary objections, it must appear with certainty the law will not allow recovery; any doubt must be resolved in favor of the non-moving party. *Wilson*, 917 A.2d at 361 n.3. All well-pled facts in the complaint, and reasonable inferences arising from those facts, are accepted as true; unwarranted inferences, conclusions of law, argumentative allegations or expressions of opinion need not be accepted. *Id.*

The purpose of a mandamus action is to compel a governmental entity to perform a ministerial act or mandatory duty. *Chadwick v. Dauphin Cnty. Off. of the Coroner*, 905 A.2d 600, 603 (Pa. Cmwlth. 2006). To prevail in mandamus, the plaintiff must demonstrate: a clear legal right for performance of an act by the government, a corresponding duty in the defendant, and the absence of any other appropriate or adequate remedy. *Filippi v. Kwitowski*, 880 A.2d 711, 713 (Pa.

7

Cmwlth. 2005). A ministerial act is "one which a public officer is required to perform upon a given state of facts and in a prescribed manner in obedience to the mandate of legal authority." *Kwitowski*, 880 A.2d at 713 (quoting *Cnty. of Allegheny Deputy Sheriff's Ass'n v. Cnty. of Allegheny*, 730 A.2d 1065, 1068 (Pa. Cmwlth. 1999)). Where the public official has discretion in how to perform the act, mandamus may compel the exercise of discretion, but it may not be used to force an official towards a desired result. *Chadwick*, 905 A.2d at 604. A party challenging administrative decision making that has not exhausted its administrative remedies is precluded from obtaining judicial review by mandamus or otherwise. *Matesic v. Maleski*, 624 A.2d 776, 778 (Pa. Cmwlth. 1993) (en banc).

## A. Demurrer

We will first address whether the trial court erred in sustaining Defendants' demurrer. Relying on Section 8816 of the Assessment Law, BT argues that there is no support for the issuance of retroactive assessments upon discovery of a clerical error. According to BT, Section 8816(a) discusses the reduction of erroneously high assessments, which is not relevant here. Subsection (b), which is relevant, discusses an increase in assessment value and is specifically limited to "the current taxable year." 53 Pa.C.S. § 8816(b) ("Nothing in this section shall be construed as prohibiting an assessment office from increasing an assessment for the current taxable year upon the discovery of a clerical or mathematical error."). BT reasons:

> Therefore, by negative implication, as the Legislature saw fit to specially [set] out when [an] increase to an assessment to correct an error may be made, which was solely for the "current taxable year[,]" the clear implication is that increases to prior taxable years are prohibited. Otherwise, the Legislature easily could have enumerated that nothing "prohibits an assessment office

8

from increasing an assessment for both the current or *past taxable years* upon discovery of a clerical error" [sic] which they did not.

Further[,] the other parts of the statute also indicate that assessment increases for past tax year[s] to correct errors are prohibited by negative implication. [Section 8816(a) of the Assessment Law] specifically state[s] that when corrections are made to <u>past</u> tax years to correct an error like the ones [sic] at issue in the instant case, and the statute provides that the Assessor is only allowed <u>to decrease past erroneous</u> tax year assessment[s] and issue refunds (and in those cases only go far back as 6 years).

BT's Brief at 24 (emphasis in original).

Defendants respond that Section 8816 is inapplicable. They maintain that Section 8816 applies only to the correction of mathematical errors in the *assessment* of a property, but here, there was no error in the assessed value. There was merely an encoding error which erroneously utilized the agreed-upon 2008 assessment value, as opposed to the true assessed value yielded from the 2008 county-wide reassessment.

After careful consideration, this Court concludes that the trial court erred in holding that Defendants established with certainty that BT is not entitled to mandamus relief. Defendants' argument in support of its demurrer makes much of the distinction between the *assessment* of a property and the *corresponding tax bills* for purposes of the application of Section 8816 of the Assessment Law. While they argue that Section 8816 is inapplicable because BT's *assessment* has been correct since the 2008 county-wide reassessment, even though the corresponding tax bills did not reflect the correct assessed amount, this argument is not supported by the statutory scheme set forth in the Assessment Law.

9

This Court's discussion in *Chester Upland School District v. 103 Commerce Drive ILP, LLC*, 309 A.3d 246 (Pa. Cmwlth. 2024), is instructive. In *Chester Upland*, a school district filed a declaratory judgment action against a property owner asserting that it underpaid taxes for four years when the property at issue was not timely reassessed following commercial improvements. In ultimately concluding that a declaratory judgment action was improper, this Court described the annual assessment roll process, which is of import here. We explained that Section 8841(a) of the Assessment Law requires a county assessment office to prepare and submit to the assessment board annually, on or before the first day of July, an assessment roll of properties that are subject to, or exempted from, local taxation. 53 Pa.C.S. § 8841(a). Section 8841(c) allows interim revisions to the assessment roll during the year to change the assessments of existing properties per Section 8817 (relating to changes in assessed valuations) or to add properties and improvements to property that were mistakenly omitted from the assessment roll as long as the notice procedures set forth in Section 8844 are followed. *Id.* § 8841(c). Section 8841(c) further states that "[a]ll additions and revisions shall be a supplement to the assessment roll for levy and collection of taxes for the tax year for which the assessment roll was originally prepared." *Id.*

Section 8844(b) requires mailed notice to property owners "within five days from the date the county assessment office makes the change or addition to its official records." 53 Pa.C.S. § 8844(b). The notice must advise property owners of the right to appeal to the board within 40 days of the date of the notice. *Id.* § 8844(b). Section 15 of the Local Tax Collection Law[5] prohibits any tax collector from "receiv[ing] payment or giv[ing] any receipt for the payment of any taxes that have

---

[5] Act of May 25, 1945, P.L. 1050, *as amended*, 72 P.S. § 5511.15.

not been duly assessed." 72 P.S. § 5511.15. Read together, the Assessment Law and the Local Tax Collection Law permit only the collection of taxes duly assessed, or, in other words, those properly issued in accordance with the procedures of the Assessment Law.

Taking the facts as stated in the Mandamus Complaint as true, it does not appear that the Assessor's Office properly followed the Assessment Law procedures. BT received only the 2021 Notice indicating a reassessed value, but not notices of revisions to the assessment roll for years 2009-2020, as required by Sections 8841 and 8844 of the Assessment Law. Instead, BT received only supplemental tax bills for those years following the 2021 Notice. Without proper notices, and the opportunity to appeal therefrom, the supplemental tax bills are invalid - those taxes were not duly assessed.

The purpose of a mandamus action is to compel a governmental entity to perform a ministerial act or mandatory duty. *Chadwick,* 905 A.2d at 603. A ministerial act is "one which a public officer is required to perform upon a given state of facts and in a prescribed manner in obedience to the mandate of legal authority." *Kwitowski*, 880 A.2d at 713. Sections 8841 and 8844 require the Assessor's Office to advise property owners, via notice, of changes to the assessment roll. As BT was not provided the proper notices for years 2009-2020, the trial court erred in sustaining Defendants' demurrer to BT's Mandamus Complaint.

## B. Failure to Exhaust Statutory Remedy

For these same reasons, the trial court likewise erred in concluding that BT failed to exhaust its statutory remedies. Section 8844(c) provides a statutory remedy to challenge, via appeal to the Board, "any change in assessment or new assessment made pursuant to [S]ection 8841(c) (relating to assessment roll and

11

interim revisions).” 53 Pa.C.S. § 8844(c). However, BT was not provided with the appropriate notice for tax years 2009-2020, and, therefore, it could not appeal. As explained above, when the Assessor's Office provides BT with the notices as required by the Assessment Law, BT may proceed with the statutory remedy afforded under Section 8844(b). Proper notices have yet to be issued, leaving BT unable to trigger this statutory remedy. Very simply, the cart cannot come before the horse. Accordingly, the trial court also erred in sustaining Defendants' Preliminary Objection on the basis of failure to exhaust statutory remedies.

### C. Unclean Hands

“The grant of a writ of mandamus is discretionary with the court, which is to be ‘guided by equitable principles.’” *Bd. of Comm'rs of Cnty. of Schuylkill v. Kantner*, 26 A.3d 1245, 1250 (Pa. Cmwlth. 2011) (quoting *WeCare Organics, LLC v. Zoning Hearing Bd. of Schuylkill Cnty.*, 954 A.2d 684, 691 (Pa. Cmwlth. 2008)). One such principle that may be raised as a defense is the doctrine of unclean hands. *Id.* This Court has explained that “conduct that ‘can be said to transgress equitable standards of conduct’ will bar that party from a writ of mandamus just as it bars equitable relief.” *Id.* (quoting *WeCare Organics*, 954 A.2d at 691).

In *Lucey v. Workmen's Compensation Appeal Board (Vy-Cal Plastics PMA Group)*, the Pennsylvania Supreme Court discussed what constitutes unclean hands, stating:

> The doctrine of unclean hands is derived from the unwillingness of a court to give relief to a suitor who has conducted himself so as to offend the moral sensibilities of the judge, and the doctrine has nothing to do with the rights and liabilities of the parties. This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with iniquity or bad faith relative to the matter in which he

12

seeks relief. This doctrine is rooted in the historical concept of a court of equity as a vehicle for affirmatively enforcing the requirement of conscience and good faith. Thus, while equity does not demand that its suitors shall have led blameless lives as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.

732 A.2d 1201, 1204-05 (Pa. 1999) (citations omitted).

In its Pa.R.A.P. 1925(a) opinion, the trial court explained that it was "unconvinced that [BT] has a 'clear legal right' to the relief it has requested" based on the equitable defense of unclean hands. R.R. 7a. The trial court wrote:

> In the present case, it is difficult to conceive how [BT] was not put on notice that something was amiss when its tax bills presumably decreased by nearly 95% from 2008 to 2009 and continued that way until 2021 when the error was finally discovered by [the Assessor's Office]. Conduct that "can be said to transgress equitable standards of conduct" will bar that party from a writ of mandamus just as it bars equitable relief." The Court has concluded that [BT's] conduct of just sitting back and continuing to only pay taxes on an assessed value which is roughly 5% of what it concedes is an otherwise fair assessment is tantamount to "unclean hands."

*Id.* at 7a-8a (citations omitted). BT argues its hands are not unclean, and "the record is devoid of any active conduct of [BT] that played a part in the error or [its] perpetuation over the 11 years as the error was entirely and squarely with the [Assessor's Office]." BT's Brief at 32-33.

We agree that in the current procedural posture, there is a dearth of evidence to support a finding of unclean hands. The trial court erred in dismissing the case at the preliminary objection stage, in part, on this finding, without allowing the parties the benefit of factual discovery to establish, or rebut, this affirmative defense.

13

## CONCLUSION

For the reasons set forth above, we hold that the trial court erred in sustaining Defendants' Preliminary Objections. Defendants did not meet their burden of showing, based on the facts pled in its Mandamus Complaint, that the law states with certainty that BT is not entitled to mandamus relief or that BT failed to exhaust statutory remedies. Accordingly, the trial court's June 22, 2022 order is reversed. On remand, the trial court shall issue an order directing Defendants to file an answer to BT's Mandamus Complaint.

_____
MATTHEW S. WOLF, Judge

Senior Judge Leavitt concurs in result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

BT Property, LLC,             :

          Appellant    :

                          :

          v.             :   No. 827 C.D. 2022

                          :

                          :

Luzerne County Assessor's Office, :
Pittston Area School District,    :
Pittston Township, and        :
Luzerne County              :

# **O R D E R**

AND NOW, this 21st day of August, 2024, the order of the Court of Common Pleas of Luzerne County (trial court) entered on June 22, 2022, is REVERSED. This matter is remanded to the trial court for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
MATTHEW S. WOLF, Judge