510 A.2d 874

John O. Marflak, Appellant *v.* City of Clairton, Appellee.

Argued March 11, 1986, before President Judge CRUMLISH, JR. and Judges ROGERS and COLINS, sitting as a panel of three.

*Lloyd H. Fuge,* for appellant.

*Robert V. Campedel, Zemprelli, Clipper and Campedel,* for appellee.

OPINION BY JUDGE ROGERS, June 5, 1986:

The controller of the City of Clairton (city), a city of the third class, has appealed an order of the Court of Common Pleas of Allegheny County refusing to open two peremptory judgments in mandamus by which the court directed the appellant to countersign city payroll and employee benefit checks.

The controller's reason for refusing to sign the checks was his belief that it was improper for him to authorize the expenditure of revenues raised for special purposes, in this case to pay interest and principal on the city's indebtedness, for general purposes, especially with the result that the city's expenditures for general purposes would exceed the statutory limitation of thirty mills times the assessed value of land and buildings. The city had during 1983 and 1984, the years in question, levied the limit of thirty mills taxes on land and buildings, and in addition a special levy for, in the main, debt service.

The facts, which we gather from a sparse record, consisting in the main of correspondence, the copy of minutes, and colloquy among court and counsel,[1] seem to have been as follows.

In 1983, the city anticipated borrowing $675,000 to pay the prior year's unfunded debt. The actual amount borrowed was $640,000, which after costs netted the city $606,120. Service on the debt was to be provided by a special tax. We do not know the 1983 millage but we learn from correspondence in the record that the levy raised $32,678 per mill of tax. It became apparent that $240,743 of the tax revenues would not be needed to service the debt in 1983. The controller informed the mayor and council in writing that that amount should be transferred to the sinking fund and used for debt serv-

---

[1] The trial consisted almost entirely of colloquy.

ice in 1984. At a November 1983 meeting of the council, a motion was made and passed to transfer $240,531 from the general fund to a sinking fund. The controller says, without contradiction, that the $240,000 was not transferred to the sinking fund and that approximately $200,000 of these special tax revenues was spent for general purposes. It also appears that the 1983 special tax revenues were commingled with other city monies.

In 1984, the city levied a special tax of 14.6 mills for "debt service, recreation, library, and shade trees." We are told that the city anticipated borrowing an additional $450,000 that year but that the loan could not be placed. The revenues received from special taxes levied for debt service of the proposed borrowing in 1984, but not needed for that purpose, were $168,000. None of the special tax revenues were transferred to the sinking fund; they were commingled with general tax revenues. The controller, in writing to the mayor and council, expressed his belief that the $168,000 should be transferred to the sinking fund and there encumbered for debt service. When the balance in the city's accounts reached $168,000, the controller refused to countersign checks. The city filed its complaint in mandamus, resulting in the final order here appealed.

The controller of a city of the third class is required to countersign warrants for the payment of monies out of the city treasury "when satisfied of the legality of such payment." Section 1706 of The Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §36706. However, mandamus will lie to require the controller to perform his countersigning duty function under Section 1706 if the controller refuses to perform his duties on the ground of a mistaken view of the law. *Duncan Meter Corp. v. Gritsavage,* 361 Pa. 607, 65 A.2d 402 (1949). In *Duncan Meter Corp.,* the controller refused to countersign a voucher warrant for payment of

parking meters because he believed that an agreement by the city to lease the meters was invalid. The Supreme Court held that the controller was mistaken in his belief that the agreement was bad so that his refusal to act was an abuse of his discretion correctable by an order that he do his duty. The issue before us therefore, is whether the controller of the City of Clairton was mistaken in his belief that it would be improper for him to countersign warrants for expenditures from revenues raised by special taxes for the purpose of servicing debt, with the effect that amounts spent for general purposes would exceed revenues generated by general taxes at a rate of thirty mills. If he was so mistaken, the peremptory judgments were properly entered.

Section 2551 of The Third Class City Code, 53 P.S. §37531 provides in pertinent part:

Council may, by ordinance, levy and provide for the collection of the following taxes:

1. A tax for general revenue purposes on all persons and property taxable according to the laws of the Commonwealth for county purposes: the valuation of such property to be assessed as hereinbefore provided.

2. An annual tax sufficient to pay interest and principal on any indebtedness incurred pursuant to the act of July 12, 1972 (P.L. 781, No. 185), known as the 'Local Government Unit Debt Act,' or any prior or subsequent act governing the incurrence of indebtedness of the city.

. . . .

4. The council of any city may, by ordinance, in any year levy separate and different rates of taxation for city purposes on all real estate classified as land, exclusive of the buildings thereon, and on all real estate classified as buildings on

land. When real estate tax rates are so levied, (i) the rates shall be determined by the requirements of the city budget as approved by council, (ii) higher rates may be levied on land if the respective rates on lands and buildings are so fixed so as not to constitute a greater levy in the aggregate than a rate of *twenty-five mills* on both land and buildings. . . .

5. Where the city council by a majority action shall, upon due course shown, petition the court of quarter sessions for the right to levy additional millage, the court . . . may order a greater rate than twenty-five mills but not exceeding *five additional mills* to be levied. (Emphasis added.)

The city had levied the full thirty mills allowed by subsections 4 and 5 and also the special levy allowed by subsection 2 when the appellant was asked to countersign the checks. Nevertheless, due no doubt to the notoriously depressed condition of the steel industry, the city had no unencumbered money to pay its bills. The controller, without citing authority, contends that the expenditure of these funds, although unneeded for debt service, was improper. The city contends that since not all of the funds generated by the 1984 levy for debt service were needed for that purpose, there was no reason in law not to use the unneeded funds for general purpose expenditures.

Section 2551(2) of The Third Class City Code, just reproduced, provides that council may levy an annual tax sufficient to pay interest and principal on any indebtedness. There is nothing in the Code which prohibits council from levying taxes for debt service although there are sufficient funds in the sinking fund during the year in which the taxes are levied to service the current debt, and there is nothing which prevents council from applying special tax revenues, which are

not needed presently in the sinking fund, to some other purpose. This is a correct statement based on a reading of the statute. Judicial authority for it is *Berger v. Borough of West Hazleton,* 43 Luz. L. Reg. 193 (1953).

Section 1001 of the Local Government Unit Debt Act, Act of July 12, 1972, P. L. 781, *as amended,* 53 P. S. §6780-451, provides that a sinking fund shall be created simultaneously with or prior to the delivery of bonds or notes, but nothing in that section requires council to deposit special tax revenues not needed for service of the debt in a sinking fund. In *Hoffman v. Norristown Borough,* 26 D. & C. 2d 683, 691 (1961), the late President Judge of the Montgomery County Court of Common Pleas, Judge E. ARNOLD FORREST, wrote in the only authority similar to this that:

> Plaintiff may contend that it is reprehensible to exact taxes on the representation that they will be used for the reduction of the public debt, and later to use the moneys for other purposes. We cannot agree. Countless factors may cause the borough council to revise its budgetary arrangements, once it has provided sufficient in the sinking fund to meet the lawful requirements of the bondholders and other lenders.

The City of Clairton it seems, had money in its sinking fund to meet its debt service requirements when it proposed to use the $168,000 for general purposes. The controller was mistaken in his belief that it was improper for him to authorize the expenditure of special tax revenues for general purposes.

Of course a pattern of commingling special revenues with general revenues is, at best, inadvisable. A pattern of levying taxes for servicing debt and using the revenues for general purposes with the effect of exceeding the cap on revenues raised for general purposes would be abusive of the intendment of the statutes. However, no intentional irregularities were suggested, charged, or established in this case.

Orders affirmed.

ORDER

AND NOW, this 5th day of June, 1986, the orders of the Court of Common Pleas of Allegheny County in the above-captioned matter are affirmed.

Judge COLINS dissents.

---

CONCURRING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I concur in the result only. I am writing to express my concern for the broad language of the majority in holding that the City of Clairton did not improperly spend special tax funds to satisfy general purpose debts.

The application of funds raised through a *special* tax levy to pay *general* expenditures should be limited to situations where the purpose for which the special tax was imposed is no longer capable of being fulfilled. The guiding principle of law is that "[t]axes levied for a specific purpose must be applied to the purpose for which they were levied." *McFarland v. Town of Bourbonnais,* 339 Ill. App. 328, 331, 89 N.E.2d 849, 852 (1950). The City of Clairton levied a special tax for debt service on a prospective loan for recreation, a library and shade trees. When the loan was not granted, the $168,000 raised by the special tax was not needed for debt service. Because the purpose for these special tax funds never materialized, the City's use of these funds to pay its general obligations was not improper.

The majority's reference to the depressed state of the City of Clairton's economy should not be construed as licensing the transfer of special fund surpluses to remedy general fund shortfalls caused by economic recession or poor government management. Absent extraordinary circumstances similar to those present here, revenues collected for a particular public purpose must be spent to fulfill that purpose.