Charles W. SMITHGALL

v.

Robert B. CAMPBELL, Jr., Appellant.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2005.

Decided Oct. 27, 2005.

Craig R. Shagin, Harrisburg, for appellant.

Neil L. Albert and Barry N. Handwerger, Lancaster, for appellee.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

This case involves an appeal by Robert B. Campbell Jr. (Controller) from a mandamus order of the Court of Common Pleas of Lancaster County requiring the Controller to sign certain documents related to a redevelopment project in the City of Lancaster (Lancaster). The mandamus order further allowed for Charles W. Smithgall (Mayor) to sign documents in the Controller's stead as attorney-in-fact.

The facts of this case date back several years and center on a plan to revitalize the commercial center of Lancaster, Penn Square, through the construction of a convention center and hotel complex. The plan itself dates back to the late 1990s, but protracted litigation did not yield a financing agreement until 2004. The financing agreement involves multiple parties including Lancaster, the Redevelopment Authority of the City of Lancaster (RACL), Penn Square Partners, and the Lancaster County Convention Center Authority.

The entire financing package is complex and amounts to an estimated $130 million. However, only two parts of the financing package, amounting to $12,000,000.00 and $24 million respectively, are relevant to this case. The City Council of Lancaster passed three ordinances on April 12, 2005, including debt statements for the $12 million and $24 million grants. Both grants are being guaranteed in part by Lancaster and therefore require approval by the Department of Community Affairs and Economic Development (DCED). DCED advised the parties to the financing agreement that applications for departmental approval of local government unit debt financing were to be submitted prior to April 30, 2005.[1]

Ten days prior to the deadline, on April 20, 2005, Lancaster's business manager presented the Controller with three documents related to the financing of the grants mentioned above. The documents detailed how both grants were to receive substantial guarantees from Lancaster and grant funding from the Commonwealth, including providing local real estate tax immunity for the property to be leased to Penn Square Partners. On the same day, the Controller read a memorandum from the Lancaster County solicitor questioning whether the RACL could extend its tax immune status to Penn Square Partners, a private, for-profit entity; whether Lancaster could guarantee against the loss of revenue if the property were subject to local real estate taxes; and whether it was a violation of the law for the RACL not to require Penn Square Partners to pay such taxes under the Infrastructure and Facilities Improvement Program, sometimes re-

1. Although this information is not part of the record, Appellee's brief informs us that after the April 27, 2005 hearing the deadline was extended due to a lack of applications. (Appellee's brief p. 2, fn. 1.)

ferred to as Act 23 of 2004, 12 Pa.C.S. § 3406(b)(11). Upon reading this memorandum the Controller began to question the advisability and legality of the financing scheme approved by the City Council and the Mayor.

On April 22, 2005, the Controller sent a letter to the Mayor stating that he would not execute the documents in question until he had received comfort in the form of an independent review by counsel of the Controller's choosing to investigate the issues raised by the county solicitor's memorandum. In response, and motivated by the impending application deadline, the Mayor sued the Controller to compel him to sign the documents. On April 25, 2005, the Controller was ordered to appear in common pleas court, and the judge entered a preliminary order requiring the Controller to execute the documents and, in the alternative, allowing the Mayor to sign as attorney-in-fact. That order was made permanent following a further hearing on April 27, 2005. The Mayor then stopped submitting further documents related to the plan to the Controller and instead executed them himself. The Controller appealed to this Court seeking to have the order vacated.[2]

There are four issues before this Court on appeal. The first is whether a controller of a city of the third class has discretion not to execute documents that he believes may result in a violation of Commonwealth law until he receives legal assurance to the contrary. The second issue is whether it was proper for a common pleas court sitting in equity to grant the power of attorney-in-fact to a mayor in order to execute certain documents without submitting such documents to the controller. The third issue is whether the redevelopment plan at issue in this case will result in a violation of Commonwealth law if the plan is implemented. The final issue is whether it was proper for the common pleas court to deny counsel fees and costs to a city controller, who was sued in his official capacity, but who preferred to hire counsel of his own choosing rather than court-appointed counsel. We affirm in part, vacate in part, and remand in part.

I. Section 1706 of the Third Class City Code[3] states that the city controller "shall countersign all warrants for the payment of moneys out of the city treasury when satisfied of the legality of such payment." 53 P.S. § 36706. A controller has some discretion based upon the statutory language to refuse to sign. However, the case law establishes that this discretion has long been limited to situations wherein the city has committed intentional irregularities such as fraud. Appellee correctly points to our Supreme Court's precedent in *Duncan Meter Corporation v. Gritsavage*, 361 Pa. 607, 65 A.2d 402 (1949). *Duncan Meter* clearly enunciates the rule that city controllers of third class cities have discretion not to sign only where the violation of law is clear and well known, or where there is fraud or bad faith present. *Id.* We will address the

---

**2.** Mandamus is an extraordinary remedy to compel performance of a ministerial act or mandatory duty; it is warranted where the petitioner has a clear legal right, respondent a corresponding duty and where no other appropriate remedy exists. *Randolph Vine Associates v. Zoning Board of Adjustment of Philadelphia*, 132 Pa.Cmwlth. 452, 573 A.2d 255 (1990), *petition for allowance of appeal denied,*

527 Pa. 589, 588 A.2d 512 (1991). This Court's scope of review in a mandamus action is to determine whether the trial court abused its discretion or committed an error of law and whether sufficient evidence exists to support its findings. *Id.*

**3.** Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. § 36706.

legality of the financing scheme below. For now, suffice it to say that the answer to that question is neither clear nor well known. Neither does the current controversy involve allegations of fraud or other irregularities. Indeed, it seems to be a disagreement over fiscal policy. This Court followed the *Duncan Meter* holding in *Marflak v. City of Clairton*, 97 Pa. Cmwlth. 643, 510 A.2d 874 (1986). *Marflak* also involved a third class city controller who refused to sign documents despite no allegations of fraud or other irregularities. In such cases, controllers of cities of the third class have a clear duty to sign, just as the city council has a right to see its duly passed ordinances executed. Mandamus was proper in this case because the Controller abused his discretion. The Controller must sign. We affirm the common pleas court on this issue.

■ II. The opinion of the common pleas court suggests two reasons for granting the power of attorney to the mayor: 1) the Controller feared personal liability if he signed the documents in question; and 2) the mayor and the common pleas court had no desire to revisit the same issues every time a document related to the redevelopment plan was submitted to the Controller. This Court is not persuaded of the need for such a remedy in either instance. To begin with, Lancaster has adopted the Mayor–Council Plan A of the Optional Third Class City Charter Law.[4] Section 413(c) of that law states that "[a]ll bonds, notes, contracts and written obligations of the City shall be executed on its behalf by the mayor *and the controller.*" 53 P.S. § 41413(c) (emphasis added). The order in question directly contravenes this section of the law and therefore cannot be said to lie within the broad equitable discretion of a common pleas judge in fashioning a remedy. Next, the Controller

repeatedly averred that his refusal to sign the documents was based solely on a concern over the legality of the plan, not his own personal liability. Additionally, given our ruling on the issue of the proper scope of a city controller's discretion in a city of the third class, we trust there will be no further confusion on the part of the Controller as to his duties. Indeed, we also note that the common pleas court need not fashion a further remedy to its mandamus order. Contempt proceedings would be the appropriate remedy were the Controller to continue to refuse to execute the documents in question. The portion of the order granting power of attorney-in-fact to the Mayor is vacated. All documents executed by the Mayor as attorney-in-fact prior to this ruling shall remain valid. Our ruling is prospective only. Henceforth, all appropriate documents shall be forwarded to the Controller for execution. We further instruct the Controller that the willful refusal to follow a valid order of the Court is contemptuous conduct. Such conduct can be penalized through fines and result in incarceration of the contemnor until such time as he or she complies with the Court's order.

■ III. On the issue of whether the financing scheme is illegal under what is known as Act 23, this Court affirms the common pleas court. This question is not properly at bar. No controversy has yet arisen. The financing scheme has not yet been approved by DCED, which is empowered to address precisely this issue. We are loath to usurp the authority of the DCED or any other appropriate agency whose authority may be implicated in this matter. To do so would not only be a usurpation of authority, it would also be ruling on a matter which has not yet, and indeed may never, come to pass. The

4. Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. §§ 41101–41625.

Controller, in effect, seeks an advisory opinion. The duties of the Controller do not depend on a legal determination of an event that has not occurred. "It is well established that a judicial determination that is unnecessary to decide an actual dispute constitutes an advisory opinion and has no legal effect.... In general, the courts of this Commonwealth may not exercise jurisdiction to decide issues that do not determine the resolution of an actual case or controversy." *Borough of Marcus Hook v. Pennsylvania Municipal Retirement Board,* 720 A.2d 803, 804 (Pa. Cmwlth.1998).

■■■ IV. Finally, we turn to the question of whether the common pleas court erred in refusing to order Lancaster to pay counsel fees and costs. Generally, an elected official sued in his or her official capacity and within the scope of his or her employment has a right to have an attorney appointed. Often the government will pay reasonable counsel fees and costs in such instances. However, in this case the Controller has refused his appointed counsel and instead retained an attorney of his own choosing. The Controller may have his reasons, but so far as this Court can determine those reasons are not of the kind that would require Lancaster to pay his counsel fees. As the common pleas court found in its opinion, the purported conflict of interest the Controller claimed was purely speculative. (Common pleas court opinion, p. 7.) The common pleas court is correct that a speculative conflict of interest is not enough to warrant either the dismissal of the court-appointed attorney or for Lancaster to have to pay the Controller's preferred attorney's fees. The court below did not abuse its discretion. However, we believe the issue of costs is wholly separate from the dispute over which attorney represents the Controller. We see no reason Lancaster

should not pay the Controller's costs. Therefore, we remand for a determination of the amount of costs, exclusive of counsel fees.

Accordingly, the order of the Court of Common Pleas of Lancaster County is affirmed in part, vacated in part, and remanded in part.

### ORDER

AND NOW, this 27th day of October 2005, the order of the Court of Common Pleas of Lancaster County in the above-captioned matter is affirmed as it relates to the controller's duty to execute documents to effectuate the ordinances and bills identified in the complaint and the denial of counsel fees.

Forthwith, all appropriate documents are to be forwarded to the Controller for execution.

The order is vacated in so far as it grants the power of attorney-in-fact to the mayor.

This Court remands for a determination of costs to the controller that are to be paid by the City of Lancaster.

Jurisdiction is relinquished.

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from the Majority's decision to affirm the trial court's order permitting the elected Mayor of Lancaster, a third class city, to sign certain financing documents in his own right as Mayor and then to sign those same documents exercising power of attorney over the elected Controller of Lancaster who refused to execute the documents after being made aware of issues raised by the County Solicitor as to the propriety of the proposed financing scheme. The Majority affirms the order of the Common Pleas Court of Lancaster County that granted

the Mayor's mandamus petition and required the Controller to sign specific documents related to the construction of a new hotel and convention center by Penn Square Partners. In affirming, the Majority disregards powers and authority granted to the Controller under Section 1706 of The Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. § 36706, and erroneously concludes that this matter involves the Controller's performance of a ministerial act.

Mandamus does not lie to compel a body or a public official vested with discretionary power or authority to use it in a particular manner. *See Hugie v. Horn,* 730 A.2d 1042 (Pa.Cmwlth.1999). It is clear that mandamus is appropriate only to compel a government body or a public official to perform a discretionary act when such government body or public official has a legally mandated duty to perform that act and has refused to do so. *Id.* In *Williams v. Worley,* 847 A.2d 134 (Pa.Cmwlth.2004), this Court articulated the settled principle that a writ of mandamus is an extraordinary remedy and one that may be issued to compel the performance of a ministerial act or a mandatory duty when a *clear right* exists in the plaintiff, a corresponding duty exists in the defendant and no other appropriate or adequate remedy is available. A mandamus writ cannot be used to control a public official's exercise of his or her discretion or judgment. *Id.*

Under Section 1706 of The Third Class City Code, the Controller "shall have the power to administer oaths or affirmations in relation to any matter touching the authentication of any account, claim, or demand of or against the city, but shall not receive any fee therefor, and shall countersign all warrants for the payment of monies out of the city treasury *when satisfied of the legality of such payment."* (Emphasis added.) Notwithstanding its recognition of this statutory provision, the Majority concludes that "controllers of cities of the third class have a clear duty to sign [the financing documents], just as the city council has a right to see its duly passed ordinances executed." Op. at 673. The Majority stated in its opinion that mandamus was proper because the Controller had committed an abuse of his discretion (that he never had) by refusing to execute the financing documents even though "the answer to [the legality of the financing scheme] is neither clear nor well known." *Id.*

As a threshold matter, the Majority's decision conflicts with the recent holding in *Filippi v. Kwitowski,* 880 A.2d 711 (Pa. Cmwlth.2005). The Court held there that the Court of Common Pleas of Erie County was correct in dismissing the mandamus complaint filed by the mayor of Erie, a third class city, to compel the city controller to authorize a salary payment when no appropriation existed for the payment. The mayor contended, among other things, that the Mayor–Council Plan A of the Optional Third Class City Charter Law[1] superseded The Third Class City Code[2] and, therefore, that the controller functioned in a ministerial capacity, justifying a writ of mandamus to compel his signature. Also the controller had no right to challenge the legal propriety of the matter. This Court cited the principles applicable to mandamus actions and in affirming the trial court held that because the controller had the power and authority to manage all payments, the controller was not required to sign every check placed before him that

1. Article IV, Sections 401–421 of the Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. §§ 41401–41421.

2. Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 35101–39701.

the mayor directed him to sign. The controller's function as to check signing was not ministerial.

In the case *sub judice*, the Majority imposes a duty upon a public official to execute documents whose validity the official has properly questioned. As the city's fiscal watchdog, the Controller has the statutory power and authority to withhold his signature to the financing documents until he is satisfied as to their legality, and nothing in the applicable statutory or case law supports a directive to the Controller to exercise his discretion in a particular way. Thus the Controller may not be forced to sign the documents and clearly should not be subject to the extreme sanction of fines and/or incarceration for failing to do so. His execution of the documents does not represent the performance of a ministerial act any more than the controller's check signing function in *Filippi*. The Third Class City Code allows the Controller discretion to satisfy himself of the validity of his acts before undertaking them, but by judicial fiat the Majority has removed that discretion.

When seeking to ascertain legislative intent, the courts have to assume that the legislature did not intend absurd results or results that were impossible of execution or were unreasonable. *See* Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1); *see also Pelter v. Pennsylvania Department of Transportation, Bureau of Driver Licensing*, 663 A.2d 844 (Pa.Cmwlth.1995). Another significant rule of statutory construction is that the courts must consider the consequences of a particular interpretation and that a statute should always be construed in a sensible and rational manner to avoid mischief as well as absurdity. *See* Section 1921 of the Statutory Construction Act, 1 Pa.C.S. § 1921. The interpretation rendered in this case violates these fundamental principles.[3]

First and foremost, no legal authority exists for the trial court to grant a power of attorney to the Mayor to execute documents on behalf of the Controller where the Controller has refused to do so in the lawful performance of his statutory functions. Second, the validity of a document signed by the Mayor in his official capacity and then signed by him exercising power of attorney must be questioned. Third, the Majority has readily conceded that it cannot determine the legality of the financial scheme that the Controller questioned and that the issue must be decided by the Department of Community and Economic Development (DCED).

Returning to the rules governing mandamus, I believe that the record is abundantly clear that mandamus is totally inappropriate here, particularly when the Mayor has not demonstrated that the Controller acted in an arbitrary, fanciful or capricious manner or acted under a mistaken belief of the law. In *Duncan Meter Corp. v. Gritsavage*, 361 Pa. 607, 65 A.2d 402 (1949), which upheld a writ in mandamus against a third class city con-

---

3. The consequences of the Majority's decision have the potential to affect adversely the operations of local governments statewide. Suppose, for example, that the Mayor of Lancaster refuses to sign future financing documents related to the project, but the city council determines that he should sign the documents. Under the Majority's reasoning the city council would have the right to a writ of mandamus to compel the Mayor to sign the documents. In the same vein, suppose the elected Treasurer questioned the legality of an improper demand made upon him by the Mayor or city council in connection with the use of collected tax revenue. Under the Majority's reasoning the Treasurer's right to investigate reasonable suspicions as to the legality of the demands would be extinguished. My concern is that the Majority has not considered the full consequences of its decision.

troller, the Pennsylvania Supreme Court cited Section 1706 of The Third Class City Code and observed that mandamus will lie to compel proper action if the controller refused to countersign the voucher warrant presented to him based upon an abuse of his discretion or a mistaken view of the law. The court held that Section 1706 gave the controller certain discretion to satisfy himself as to the legality of the payment to be made to the plaintiff under a parking meter leasing contract but that "such discretion must be one adhering to well known and established principles of law, rather than an arbitrary, fanciful or capricious one." *Id.*, 361 Pa. at 610, 65 A.2d at 403.

The Supreme Court first determined in *Duncan Meter*, however, that the parking meter leasing contract was not invalid, and it then concluded that the controller had no right or duty to decide if it had been breached or whether the city should act upon that breach. The court accordingly concluded that the controller's refusal to sign the warrant was based in part upon a mistaken view of the law and in part upon an abuse of his discretion. Also in *Marflak v. City of Clairton*, 97 Pa.Cmwlth. 643, 510 A.2d 874 (1986), this Court cited the principles enunciated in *Duncan Meter*. After first determining that no intentional irregularities existed in the city's levying a special tax and then commingling the excess revenue into the general tax revenue fund, this Court upheld issuance of a mandamus writ against the controller of Clairton, a third class city, requiring him to countersign checks for the excess revenue. The Court held that the controller was mistaken in his belief that it was improper to authorize expenditure of the special tax revenue for general purposes.

The Majority acknowledges that the legality of the financing scheme has not been decided, and, consequently, it errs in concluding that the Controller here abused his discretion in refusing to sign the documents, particularly when he had reviewed the opinion from the Solicitor. In *Duncan Meter* and in *Marflak*, the courts first determined the legality of actions questioned by the controllers before affirming the trial courts. That step was omitted here; rather, the Majority concluded that the legality of the financing scheme must be decided by DCED, which ultimately may result in vindication of the position taken by the Controller.

There obviously is no clear right to relief in the Mayor in this case, there clearly is no corresponding duty to act in the Controller, and there certainly is another appropriate or adequate remedy available. *See Williams.* The Controller's position may or may not be vindicated by a DCED ruling, but nonetheless other remedies or options still remain available that preclude a writ in mandamus.[4]

Judge FRIEDMAN joins in this dissenting opinion.

---

4. I strongly disagree with the Majority's decision to deny attorney's fees to the Controller that were incurred in connection with his defense of the mandamus action arising out of the performance of his official duties. The Majority cites no authority for denying what the law allows.